STATE of Wisconsin, Plaintiff-Respondent,

v.

Pablo Cruz SANTANA, Defendant-Appellant.

Court of Appeals

*No. 97–2048–CR. Oral argument May 12, 1998.—Decided June 24, 1998.*

(Also reported in 584 N.W.2d 151.)

On behalf of the defendant-appellant, there were briefs and oral arguments by *Steven P. Weiss*, assistant state public defender, Madison.

On behalf of the plaintiff-respondent, there was a brief by *James E. Doyle*, attorney general, and *Thomas J. Balistreri*, assistant attorney general. There were oral arguments by *Thomas J. Balistreri*.

Before Snyder, P.J., Brown and Anderson, JJ.

SNYDER, P.J. Pablo Cruz Santana appeals from a judgment of conviction after he pled guilty to a charge of aggravated battery and an order denying postconviction relief. Santana claims that: (1) the fifteen-year maximum enhanced sentence was unduly harsh and excessive based on his minimal prior record, and the trial court misused its discretion when it failed to indi-

vidualize the sentence;[1] (2) Judge Robert J. Kennedy should have disqualified himself because he sentenced Santana in the middle of a recall effort, which was based on allegations that the judge was too lenient in his sentencing; and (3) the sentence was a product of the pressure imposed by the recall effort and should therefore be vacated in the interests of justice.

We conclude that the initial issue presented by this case is whether the trial court considered an improper factor when sentencing Santana. Specifically, did the trial court consider the impact of Santana's sentence on the recall effort when it determined that the maximum sentence should be imposed? We next consider the issue of whether Judge Kennedy should have recused himself from the sentencing because of the danger of bias or prejudice. A careful review of the record in this case and consideration of the judge's comments in context convince us that the trial court properly exercised its discretion in sentencing Santana, and that Judge Kennedy's decision not to recuse himself should also be upheld. Our decision on these two issues then disposes of Santana's claim that we should remand for resentencing in the interests of justice, and we affirm.

Santana was originally charged with one count of aggravated battery and one count of recklessly causing great bodily harm. *See* §§ 940.19(5), 940.23(1), Stats.

---

[1] In the issues presented portion of his brief, Santana's counsel lists four separate claims for consideration. The discussion portion, however, combines a claim that the sentence imposed was unduly harsh and excessive with an argument that the trial court's "fail[ure] to individualize the sentence to Santana's circumstances" was a misuse of discretion. We will consider Santana's claims as they were presented in the discussion portion of his brief.

Both charges were subject to a weapon enhancer. *See* § 939.63(1)(a)2, STATS. Santana entered a plea to the first charge pursuant to a plea agreement and the State agreed to dismiss the reckless injury charge. Both parties requested a presentence investigation report (PSI).

The trial court refused to accept the first PSI because the author of the report told the court that she had not been able to speak directly with Santana. This was due to a failure to secure the services of an interpreter, which were necessary because Santana speaks only Spanish. Judge Kennedy ordered the preparation of a new PSI after an interpreter could be arranged. A second PSI was prepared; it recommended a sentence of three to five years in prison.[2]

At the sentencing hearing the trial court explained its reasons for the sentence imposed on Santana. Judge Kennedy began with a recitation of proper considerations, including that any sentence should be based on "the minimum amount of confinement . . . which is consistent with the protection of the public, the gravity of the offense, and the rehabilitative needs of the defendant." He also commented that sentencing should "be rooted in the facts and circumstances of each case." He continued by reiterating that a sentence of confinement must be based on the need to protect the public and with recognition that in some cases a sentence of probation "would unduly depreciate the seriousness of the offense."

Taking into account the offense itself, the judge found it to be "an aggravated crime because the stabbing caused [the victim] such injury that he is still suffering those effects very substantially," commented

---

[2] The first PSI had recommended a sentence of eight years.

that Santana's culpability was "total" and noted that the crime had resulted in "severe" injuries. Judge Kennedy also considered the act vicious and unprovoked, and he remarked that Santana had "almost kill[ed]" the victim of the stabbing. The court also noted that it must consider the rights of the public and that "[t]he public does not want people going around stabbing others."

Other factors specific to Santana were also considered. The court noted that Santana had a "good demeanor," although it balanced this with its assessment that "[Santana] does try to claim that the other side was at fault and claims a self-defense [theory of defense] that does not seem to have any real basis in fact" and that this "does argue against easy rehabilitation." The court recognized Santana's limited education, while also noting that the fact that he had worked very hard at fairly low wages was "no reason to condone . . . conduct like this." Judge Kennedy also remarked that although he had been taught "that when people have been good and they have been fine people, that ought to be taken into account," there is another side of this which is that an offense may hurt someone "so badly and the, the effects are so continuing, that one must literally say, 'the good things you did before are as nothing because of what you did this time and the hurt that you inflicted on somebody.' "

Judge Kennedy then proceeded to sentence Santana to the maximum term for this crime—fifteen years. In imposing the lengthy sentence, the court also explained:

> [O]ne of the problems I have with this . . . when I say fifteen years, it seems an awful long time. But the defendant does have a minimum mandatory right of

release, which is another reason why a three to five-year sentence would make no sense, because then his release date would be so much earlier and it would, as I say, unduly depreciate the crime.

After the sentence was imposed, defense counsel asked the trial court:

[DEFENSE

COUNSEL]: . . . Is your Honor saying that because of the recent criticism you have received regarding the two recent rape cases you are sentencing Mr. Santana more harshly than you would have done but for that criticism?

THE COURT: No. Yes and no. There is a yes and no there.

The judge then proceeded to explain what he meant by this answer. Included in that explanation was a statement that the public's reaction had "suggested to me that I must take the victim's matters into account more, and that I must not give such a great weight to a person's good past history."

Following sentencing, Santana sought postconviction relief. Appellate counsel was able to obtain a stipulation from the district attorney agreeing to a reduction of the fifteen-year sentence to ten years in exchange for an agreement not to appeal. Judge Kennedy was unwilling to accept the stipulation unless the victim agreed to the reduction; he did not. Santana then filed a postconviction motion asking for resentencing; at the same time he brought another motion in

which he asked Judge Kennedy to recuse himself. Judge Kennedy denied the request for recusal.[3]

At the hearing, Judge Kennedy proceeded to state on the record his reasons for denying the postconviction motion on all bases. He reaffirmed the appropriateness of the fifteen-year sentence. Santana now appeals.

As we view it, the question is not whether the imposition of the maximum enhanced fifteen-year term was unduly harsh and excessive, nor is it an issue of whether the trial court failed to individualize Santana's sentence. Rather, the issue presented by Santana's first claim is whether the trial court considered an improper factor in imposing the sentence. Sentencing is left to the discretion of the trial court, and appellate review is limited to determining whether there was a misuse of that discretion. *See State v. Patino,* 177 Wis. 2d 348, 384, 502 N.W.2d 601, 615–16 ( Ct. App. 1993). In our review of a trial court's exercise of its sentencing discretion, we presume that the trial court acted reasonably and the defendant bears the burden to show some unreasonable or unjustifiable basis in the record for the sentence. *See id.* at 384, 502 N.W.2d at 616. A sentence is not justifiable if the trial court considered irrelevant or improper factors. *See id.* While the three primary considerations are the gravity of the offense, the character of the offender and the need to protect the public, the court may also consider the defendant's personality, character and social traits. *See id.* at 385, 502 N.W.2d at 616. The weight to be given each of these factors lies within the court's discretion. *See id.*

---

[3] This court denied Santana's petition for leave to appeal from Judge Kennedy's denial of the recusal request in an order dated April 30, 1997.

In passing sentence, the trial court addressed each of the primary factors, but chiefly relied on the seriousness of the offense and its continuing impact on the victim. The court stressed its desire to impose a sentence that would not unduly depreciate the seriousness of the offense and commented that it was taking into account the amount of time that Santana would actually serve if the district attorney's recommendation were followed. The trial court considered Santana's unwillingness to take responsibility for his actions and recognized that this would make rehabilitation more difficult. All of these were proper considerations for the sentencing court.

Santana claims, however, that the judge's comments also evinced an impermissible consideration of how the sentence imposed would be perceived by the public, and he argues that this factor was primarily responsible for the lengthy sentence. However, we disagree with this characterization of Judge Kennedy's remarks. The complete transcript of the sentencing hearing convinces us that Judge Kennedy considered a wide range of information about Santana and offered numerous reasons for his ultimate decision. After the sentence was imposed, defense counsel inquired whether the sentence Judge Kennedy imposed was affected by the recall campaign:

> Is your Honor saying that because of the recent criticism you have received regarding the two recent rape cases you are sentencing Mr. Santana more harshly than you would have done but for that criticism?

The trial court responded:

> No. Yes and no. There is a yes and no there.

I have become acutely aware of the, the types of crimes that will unduly depreciate the seriousness of an offense. And I admit that the public reaction has suggested to me that I must take the victim's matters into account more, and that I must not give such a great weight to a person's good past history.

There is nothing, however, wrong with that. The Court is supposed to be attuned. I may not have been. I am attuned, at least a little better. Being attuned to that need, I am supposed to consider it.

It therefore in a sense is because of the criticism in the sense that that is what attuned me to the public's insistence that the lesser sentences probation, shorter sentences, on serious offenses unduly depreciate the seriousness of the offenses.

... [T]he judge is supposed to look into whether the penalty will unduly depreciate the seriousness of the offense.

So in one sense, yep, you're right. But in another sense, no, I'm simply reflecting what I should have known before and did not grasp.

Consideration of the trial court's comments in context convinces us that the judge's comments were merely a reference to giving a factor more weight than he had previously: the factor of imposing a sentence which does not unfairly depreciate the seriousness of the crime and its impact on the victim. At the postconviction hearing, the trial court explained:

[Santana's trial attorneys] could have every reason ... to believe that I would be fair. And they were right, I would be.

They would expect me to resist any temptation to sentence because of the recall and to sentence only because of what I thought. They were right again.

> That I might have a heightened sense of aware-
> ness of a victim and the victim's feelings does not
> mean I'm not sentencing fairly by considering that.

Judge Kennedy also remarked, "A judge is a living compilation of all of his or her experiences and contacts, [and] so is every appellate or . . . Supreme Court judge." He then continued, "The defendant's appellate attorney's approach in this case means any judge can be forced to step down and become a witness to his or her life experiences that may have affected the judge's judicial philosophy."

██

The transcripts of the sentencing hearing as well as several postconviction hearings make an extensive record of the trial court's comments at sentencing and its explanation for what was considered. We are convinced that the sentence was the result of a proper exercise of discretion and that this was fairly supported by the record. We therefore affirm the imposition of the fifteen-year enhanced sentence as an appropriate exercise of sentencing discretion.

Nonetheless, Santana argues that this case "cries out for meaningful collegial review" under *McCleary v. State,* 49 Wis. 2d 263, 182 N.W.2d 512 (1971). We agree that *McCleary* recites the relevant law on the topic of appellate review of a trial court's sentencing discretion, and our decision in the instant case is not inapposite to the holding of *McCleary*. In that case, the supreme court concluded that "[t]he problem in the instant case arises because the trial judge failed to give his reasons why a lengthy near-maximum sentence was appropriate." *Id.* at 282, 182 N.W.2d at 522. However, as the court noted there, even that fact would not require it to set aside the sentence. Instead, it required the reviewing court to

> search the record to determine whether in the exercise of proper discretion the sentence imposed can be sustained. It is not only our duty not to interfere with the discretion of the trial judge, but it is, in addition, our duty to affirm the sentence on appeal if from the facts of record it is sustainable as a proper discretionary act.

*Id.* Because our review of the record has convinced us that Judge Kennedy weighed only proper considerations before imposing the sentence, application of the rule of law of *McCleary* leads us to conclude that Santana's sentence must be affirmed as being a proper exercise of trial court discretion.

██

 Santana next claims that Judge Kennedy erred in his decision not to recuse himself when defense counsel brought a motion for substitution of judge at the post-conviction hearing. Whether Judge Kennedy was a "neutral and detached magistrate" is a question of constitutional fact which we review de novo and without deference to the trial court. *See State v. McBride,* 187 Wis. 2d 409, 414, 523 N.W.2d 106, 109 (Ct. App. 1994). There is a presumption that a judge is free of bias and prejudice. *See id.* In order to overcome this presumption, the party asserting judicial bias must show by a preponderance of the evidence that the judge is biased or prejudiced. *See id.* at 415, 523 N.W.2d at 109.

 In determining whether Judge Kennedy's decision not to recuse himself resulted in bias or prejudice to Santana, we must evaluate the existence of bias in both a subjective and an objective light. *See id.* at 415, 523 N.W.2d at 110. The subjective component is based on the judge's own determination of whether he will be able to act impartially. *See id.* In determining whether this component is satisfied, it is only necessary to

examine Judge Kennedy's decision not to recuse himself. *See id.* If he had subjectively believed that he could not act impartially, he would have been required to disqualify himself from the case. Because he did not, we may presume that Judge Kennedy believed himself capable of acting in an impartial manner, and our inquiry into this factor is at an end. *See id.*

Under the objective test, we must determine whether there are objective facts demonstrating that Judge Kennedy was actually biased. *See id.* at 416, 523 N.W.2d at 110. Under this test, Santana is required to show that the judge "in fact treated him unfairly." *Id.* For example, in *Connally v. Georgia*, 429 U.S. 245 (1977), the Supreme Court concluded that a justice of the peace who received compensation for each warrant issued was not impartial. Santana does not offer any objective, factual basis for his claim that Judge Kennedy was actually biased. Wisconsin law is clear that "[m]erely showing that there was an appearance of partiality or that the circumstances might lead one to speculate that the judge was partial is not sufficient." *McBride*, 187 Wis. 2d at 416, 523 N.W.2d at 110.

Here, Santana contends that Judge Kennedy "was in a situation any human being would find difficult or impossible. He was involved in a fight to save his job and his career, and at the same time he had to figure out a way to remain impartial, and to sentence Santana according to his own conscience . . . ." Defense counsel then asks that this court "take a position on requiring judges in the midst of recall campaigns to disqualify themselves from sitting on cases with so obvious a potential for conflict." That, however, is not the law in Wisconsin.

Judicial disqualification under § 757.19(2)(g), STATS., concerns not an outsider's objective determina-

tion, but rather the judge's subjective determination. *See State v. American TV & Appliance,* 151 Wis. 2d 175, 182, 443 N.W.2d 662, 665 (1989). It mandates a judge's disqualification "*only when that judge makes a determination* that, in fact or in appearance, he or she cannot act in an impartial manner." *Id.* at 183, 443 N.W.2d at 665 (emphasis added). Disqualification is not required in a situation where "*one other than the judge* objectively believes there is an appearance that the judge is unable to act in an impartial manner." *Id.* (emphasis added). This holding was reaffirmed more recently in *State v. Harrell,* 199 Wis. 2d 654, 658, 546 N.W.2d 115, 117 (1996), when the supreme court stated: "Whether the general subjective situation exists and requires disqualification, however, is based upon the judge's own determination of whether he or she may remain impartial." Appellate review of such a determination is "limited to establishing whether the judge made a determination requiring disqualification." *Id.* at 663–64, 546 N.W.2d at 119 (quoted source omitted).

██ Judge Kennedy clearly made a determination regarding his ability to proceed in the case. He stated at the postconviction hearing:

> The Court simply does not see how it should recuse itself . . . .
> If I, in my own mind, believed that I sentenced Mr. Santana because I wanted to incur . . . favor with the voters and also to . . . deter or lessen the work of the people who were circulating the petition for my recall in 1996, I would recuse myself right now. That would be wrong. But I did not do so.

It is apparent that Judge Kennedy considered whether there was any bias or prejudice in his sentencing deci-

sion that would require him to recuse himself from considering the postconviction motions relating to the sentencing.[4] He concluded that he could be impartial. As outlined above, this is all that § 757.19(2)(g), STATS., requires.

Santana next argues that his sentence should be vacated "in the interest of justice" and because justice has miscarried. *See* § 752.02, STATS. Santana argues that "there is no justification in the record for the maximum, enhanced sentence imposed here" and then posits that "[t]he only explanation for the extreme sentence is the . . . recall election and the judge's concern over the public's opinion of the sentence."[5] Based on our decision on the merits of Santana's two previous

---

[4] A former California supreme court justice used the following metaphor to describe the dilemma of deciding controversial cases while facing reelection. He said it was like "finding a crocodile in your bathtub when you go in to shave in the morning. You know it's there, and you try not to think about it, but it's hard to think about much else while you're shaving." Gerald F. Uelmen, *Crocodiles in the Bathtub: Maintaining the Independence of State Supreme Courts in an Era of Judicial Politicization*, 72 NOTRE DAME L. REV. 1133, 1133 (1977).

The article also notes that while a judge will never admit that his or her vote was influenced by public pressure, "It takes a truly sensitive judge to even engage in the soul searching inquiry into the impact of the crocodiles in the bathtub upon his or her decisionmaking process." *Id.* at 1142. We are convinced that the record reveals that Judge Kennedy engaged in this kind of personal inquiry when his sentencing decision was questioned.

[5] Santana's appellate counsel argues that the "real reason for Judge Kennedy's refusal to accept the stipulation of the parties" was likely founded on his concern for how he thought the public would view a reduction. This conclusion ignores the equally likely inference that Judge Kennedy was unwilling to

arguments and our affirmance of the trial court, there is no reason to consider any further an argument that justice has miscarried. Judge Kennedy's imposition of the fifteen-year enhanced sentence was not a misuse of discretion, and the judge's determination that he was not partial or biased concludes our examination of Santana's claims.

*By the Court.*—Judgment and order affirmed.

bow to any outside pressure to reduce a sentence that was supported by his reasoned consideration of legitimate factors.