STATE of Wisconsin, Plaintiff-Respondent,

v.

Somkhith NEUAONE, Defendant-Appellant.†

Court of Appeals

*No. 2004AP196–CR. Submitted on briefs March 31, 2005.
—Decided May 18, 2005.*

2005 WI App 124

(Also reported in 700 N.W.2d 298.)

† Petition to review denied 10-3-05.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Ralph J. Sczgelski* of *Sczgelski Law Firm* of Manitowoc.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general, and *Eileen W. Pray*, assistant attorney general.

Before Brown, Nettesheim and Snyder, JJ.

¶ 1. NETTESHEIM, J.   Based upon a plea agreement, Somkhith Neuaone pled guilty to two counts of bail jumping and possession of cocaine, second offense. Pursuant to the plea agreement, the State agreed not to provide the trial court with audiotapes that indicated Neuaone's involvement in a separate and unrelated pending criminal matter involving Neuaone's wife. Prior to Neuaone's sentencing, the State informed the court that the tapes had inadvertently been provided to the court in the context of the pending matter against

Neuaone's wife. In response, Neuaone filed a motion to withdraw his guilty pleas. However, he later withdrew this motion. Neuaone additionally filed a motion for recusal of the sentencing court, which the court denied.

¶ 2. On appeal, Neuaone argues that the State's revelation of the audiotapes constituted a breach of the plea agreement and therefore he is entitled to withdraw his pleas. Alternatively, Neuaone requests that we remand this matter for enforcement of the plea agreement before a different sentencing judge. Within the context of this latter argument, Neuaone also appears to argue that the trial court erred in denying his motion for recusal. We reject Neuaone's arguments and affirm the judgment.

### *BACKGROUND*

¶ 3. On November 26, 2001, the State filed a criminal complaint against Neuaone alleging one count of possession of cocaine with intent to deliver, second offense, and two counts of bail jumping. The matter was assigned to Judge Gary Langhoff. Following a pretrial hearing on May 17, 2002, the parties reached a plea agreement, which they then placed on the record before Judge Langhoff. Pursuant to the plea agreement, the State would amend the possession with intent to deliver charge to one of simple possession, second offense. In exchange, Neuaone would plead guilty or no contest to the lesser charge and to the two bail jumping charges. In addition, the State agreed to recommend a sentence of twenty-two years, "[n]ine years in, and 13 years under extended supervision" to run concurrent with a sentence Neuaone was already serving. The plea agreement was documented in a plea questionnaire signed by Neuaone. Following a plea colloquy, Judge Langhoff accepted Neuaone's pleas, ordered a presentence investigation, and scheduled the matter for sentencing.

¶ 4. However, the parties did not advise Judge Langhoff of an additional provision of the plea agreement—the State's promise that it would not reveal to Judge Langhoff the contents of recorded conversations between Neuaone and his wife, Renata. These conversations reflected Neuaone's participation in an unrelated criminal case in which Neuaone's wife was charged with attempted intentional homicide, substantial battery and false imprisonment. That case had also been assigned to Judge Langhoff.

¶ 5. On June 10, 2002, prior to Neuaone's sentencing, Judge Langhoff held a status conference at the parties' request. There, the State informed the judge that it had inadvertently violated the plea agreement by submitting the audiotapes to Judge Langhoff in the context of the criminal matter involving Neuaone's wife. Judge Langhoff responded that he had listened to the recordings in preparing for the sentencing of Neuaone's wife and that he had played the recordings in open court at the sentencing. According to Judge Langhoff, the conversations evidenced Neuaone's involvement in some of the events leading to his wife's arrest.[1] The judge stated that "the statements and the things expressed on that tape may have a direct impact on the Court's view of sentencing in the case." In response, Neuaone suggested that Judge Langhoff consider recusing himself from Neuaone's case and transferring the matter to another judge who had not heard the tapes. Judge Langhoff adjourned the proceedings to further consider the matter.

---

[1] Neuaone was later charged with party to the crime of substantial battery and party to the crime of false imprisonment for his involvement in this matter. Sheboygan County Case No. 2002CF382 is still pending.

¶ 6. Judge Langhoff next addressed the matter at a hearing on July 18, 2002,[2] advising the parties that he saw three options: (1) the parties could proceed with sentencing with the expectation that Judge Langhoff would consider all relevant information, including the tapes; (2) Neuaone could request plea withdrawal; or (3) either party could seek the judge's recusal by filing a formal motion for recusal. Neuaone indicated that he likely would pursue the recusal option. Judge Langhoff then directed Neuaone to file a written motion seeking that relief. The judge additionally indicated his surprise that "the State would advance a plea agreement wherein relevant information would be withheld from the Court for sentencing."

¶ 7. In compliance with Judge Langhoff's directive, Neuaone filed a motion for recusal claiming that the information on the tapes had prejudiced Judge Langhoff against him. On September 12, 2002, Judge Langhoff issued a written decision denying Neuaone's motion.[3] In his decision, the judge identified the primary issue as "whether a plea agreement which conceals relevant information from the court about the defendant's character is violative of public policy." The judge determined that the agreement did violate public policy and could not be honored by the court. Because the court was entitled to the information, Judge Lang-

[2] We recognize that the transcript reflects a hearing date of August 18, 2002; however, the trial court's decision and order reflects that the hearing took place on July 18, 2002.

[3] Judge Langhoff's written decision indicates that both the State and Neuaone had moved for recusal. Actually, only Neuaone formally moved for recusal by written motion. The judge's statement presumably was based on the State's oral statement at the July 18, 2002 hearing that it joined in Neuaone's oral request for transfer of the case to another judge.

hoff reasoned that Neuaone had not offered valid grounds for recusal. Judge Langhoff therefore denied Neuaone's motion for recusal and scheduled the matter for sentencing.

¶ 8. At the opening of the sentencing hearing, Judge Langhoff observed that Neuaone, now represented by new counsel, had recently filed a motion to withdraw his guilty pleas.[4] However, Neuaone's counsel responded that, after discussions with Neuaone and the State, Neuaone did not want to pursue the motion and did not want to withdraw his pleas. Judge Langhoff then recessed the proceeding to allow Neuaone and his counsel additional time to discuss the matter. When the case was recalled, Judge Langhoff engaged Neuaone in a personal colloquy, asking Neuaone whether he had had sufficient time to discuss the decision to withdraw his motion for plea withdrawal with his attorney and whether he concurred with his attorney's statement that Neuaone in fact wished to withdraw the motion seeking plea withdrawal. Neuaone responded in the affirmative. The matter then proceeded to sentencing. Neuaone appeals from the ensuing judgment of conviction.

## DISCUSSION

¶ 9. On appeal, Neuaone argues that the State breached the plea agreement, that the breach was material and substantial and, therefore, that he is entitled to withdraw his pleas. In the alternative, Neuaone requests that this court enforce the plea

---

[4] Although Judge Langhoff stated that Neuaone had filed a motion to withdraw his guilty pleas, the appellate record does not include any such motion.

agreement and remand for sentencing before a different judge. Neuaone also appears to argue that Judge Langhoff erred in failing to recuse himself.

¶ 10. We begin by addressing Neuaone's request for plea withdrawal. At the hearing on July 18, 2002, Judge Langhoff offered Neuaone the options of proceeding with the sentencing, seeking plea withdrawal, or seeking the judge's recusal. Neuaone opted for recusal and filed a motion seeking that relief. In support, Neuaone argued that the audiotapes revealed information detrimental to his sentencing interests and that Judge Langhoff was therefore biased against him since the judge had been exposed to the information. Judge Langhoff denied the request in a written decision. The judge ruled that the plea agreement was in violation of public policy pursuant to *State v. McQuay*, 154 Wis. 2d 116, 452 N.W.2d 377 (1990), because it withheld relevant sentencing information from the court. The judge concluded that information to which a sentencing court was rightly entitled could not, without more, serve as a basis for judicial bias and disqualification.

■

¶ 11. Just prior to his sentencing on June 20, 2003, Neuaone finally filed a motion for plea withdrawal. However, when the case was called, Neuaone's attorney immediately indicated to Judge Langhoff that Neuaone did not wish to pursue the plea withdrawal motion. The judge then recessed the case and directed Neuaone and his counsel to further discuss the matter.[5] When the case was recalled, the judge engaged Neuaone in a personal colloquy in which Neuaone affirmed that he did not wish to pursue his motion to withdraw his

---

[5] Neuaone's counsel also requested the recess so that he might have time to prepare arguments relating to, among other things, "a letter that was attached to the pre-sentence report

guilty pleas and instead wanted to proceed to sentencing. Later, in his sentencing argument, Neuaone's counsel stated, "[Neuaone] accepts responsibility for the violations and he's not placing the blame or he's not hiding behind the issue as to the fact there [were] issues about a tape that was heard and whether that would impact on your sentencing decision . . . ."

¶ 12.  This record unequivocally establishes that Neuaone abandoned his motion to withdraw his pleas based on the State's admitted breach of the plea agreement. The record additionally reveals that Neuaone made this decision with full knowledge that Judge Langhoff would not be honoring the plea agreement since the judge had already ruled in his earlier written decision that the plea agreement was in violation of public policy and that the judge would be considering all relevant sentencing information, including the recorded conversations. Having abandoned his request for relief based on the State's breach of the plea agreement, we reject Neuaone's attempt to resurrect it on appeal.[6] *See Herkert v. Stauber,* 106 Wis. 2d 545, 560–61, 317 N.W.2d 834 (1982) (generally, an issue is not properly before us on appeal when the trial court

---

where the Court had made admonitions that it had listened to a tape from his wife's case and that that may impact on the sentencing . . . ."

[6] We therefore reject Neuaone's attempt to align his case with *State v. Smith,* 198 Wis. 2d 820, 543 N.W.2d 836 (Ct. App. 1995), *rev'd,* 207 Wis. 2d 258, 558 N.W.2d 379 (1997), in which the defendant claimed ineffective assistance of counsel for failing to object at sentencing when the prosecutor breached the plea agreement, or *State v. Wills,* 187 Wis. 2d 529, 523 N.W.2d 569 (Ct. App. 1994), *aff'd,* 193 Wis. 2d 273, 533 N.W.2d 165 (1995), in which the defendant maintained his objection to the prosecutor's alleged breach of the plea agreement prior to sentencing. *See also* Defendant-Appellant's Opening Brief at 9.

was not given an opportunity to consider an argument and either correct itself or make a ruling that this court could then review). In short, we have nothing to review on this issue since the trial court was never asked to make a ruling on the question.

¶ 13.   Neuaone also contends that the plea agreement was not in violation of public policy, and therefore the State's admitted breach of the agreement requires that we direct enforcement of the agreement on remand. We reject Neuaone's argument. As Judge Langhoff aptly noted in his written decision, *McQuay* unequivocally condemns the kind of plea agreement entered into by Neuaone and the State in this case.

> Agreements by law enforcement officials, whether they be by the police or prosecutors, not to reveal relevant and pertinent information to the trial judge charged with the duty of imposing an appropriate sentence upon one convicted of a criminal offense, are clearly against public policy and cannot be respected by the courts.

*McQuay*, 154 Wis. 2d at 125 (citation omitted). This rule "is intended to protect the integrity of the sentencing process by ensuring that the court charged with the duty of selecting an appropriate sentence for a convicted defendant is not intentionally deprived of relevant information concerning the defendant at the time of sentencing." *Id.* at 126. While Neuaone argues that "withholding information is certainly different from affirmatively supplying information," the fact remains that the terms of the plea agreement unequivocally required the State, in Neuaone's own words in his appellate brief, "to not provide certain audiotapes to the court either before or at sentencing regarding an attempted homicide case . . . ." We fail to see how this is

not an agreement to withhold relevant information from the sentencing court.

■■■

¶ 14.  Neuaone also argues that the plea agreement in this case is akin to those routinely enforced plea agreements that obligate the State to "stand silent." We disagree. Our understanding of a "stand silent" agreement is that it obligates the State to refrain from offering a sentencing recommendation. Such an agreement does not obligate or permit the State to withhold *relevant factual* information that bears on the sentence. Other courts share a similar understanding:

> As part of a plea agreement, the Government is free to negotiate away any right it may have to recommend a sentence. However, the Government does not have a right to make an agreement to stand mute in the face of factual inaccuracies or to withhold relevant factual information from the court. Such an agreement not only violates a prosecutor's duty to the court but would result in sentences based upon incomplete facts or factual inaccuracies, a notion that is simply abhorrent to our legal system.

*United States v. Block*, 660 F.2d 1086, 1091–92 (5th Cir. 1981).

■■

¶ 15.  We next turn to Neuaone's apparent contention that Judge Langhoff erred in denying his motion for recusal pursuant to Wis. Stat. § 757.19(2)(g) (2003–04),[7] which governs the disqualification of a judge.[8] It provides:

---

[7] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

[8] We are not all that certain that Neuaone is actually making this argument because he does not cite to any of the relevant and controlling law of judicial disqualification. How-

**(2)** Any judge shall disqualify himself or herself from any civil or criminal action or proceeding when one of the following situations occurs:

. . . .

(g) When a judge determines that, for any reason, he or she cannot, or it appears he or she cannot, act in an impartial manner.

¶ 16.   Whether a judge was a "neutral and detached magistrate" is a question of constitutional fact which we review de novo and without deference to the trial court's ruling. *State v. Santana*, 220 Wis. 2d 674, 684, 584 N.W.2d 151 (Ct. App. 1998). We begin with a presumption that the judge is free of bias and prejudice and the burden is on the party asserting judicial bias to show by a preponderance of the evidence that the judge is biased or prejudiced. *Id*. In determining the question, we apply both a subjective and an objective test. *Id*. We first look to the challenged judge's own determination of whether the judge will be able to act impartially. *Id*. Next, we look to whether there are objective facts demonstrating that the judge was actually biased. *Id*. at 685. This requires that the judge actually treated the defendant unfairly. *Id*.

¶ 17.   In answering Neuaone's argument, we need not even get to the two-prong test for judicial bias because the premise for the argument is fatally flawed. Neuaone's sole basis for seeking Judge Langhoff's recusal was the fact that the judge had acquired informa-

ever, Neuaone does argue that we should remand this case for sentencing before a different judge. That argument implies that there is reason to suspect the fairness of Judge Langhoff. We therefore choose to address this issue.

tion detrimental to Neuaone's sentencing interests via the State's breach of the plea agreement. But, as Judge Langhoff explained in his decision and as we have further explained in this opinion, the plea agreement was contrary to public policy and thus the judge was *entitled* to the information in the first instance. Moreover, the same would be true of any other judge who might have been assigned to conduct Neuaone's sentencing if Judge Langhoff had recused himself. It goes without saying that a judge's consideration of relevant sentencing information to which the judge is rightfully entitled cannot, without more, form the basis for recusal under a Wis. Stat. § 757.19(2)(g) motion. Other than arguing that the content of the audiotapes reflected poorly on him, Neuaone fails to otherwise demonstrate how this information translates into subjective or objective bias on the part of Judge Langhoff. We uphold the denial of Neuaone's request for recusal.

¶ 18. In the final analysis, Neuaone's core argument is that the State's breach, not the invalidity of the plea agreement, should govern this appeal. Thus, Neuaone requests that we remand this case for enforcement of the invalid plea agreement at a new sentencing before a different judge. We decline to mandate a proceeding so clearly in violation of public policy as announced by our supreme court in *McQuay*.

### *CONCLUSION*

¶ 19. We hold that Neuaone abandoned his right to request plea withdrawal when he failed to pursue his motion for such relief at the sentencing hearing. We reject Neuaone's request that we remand for enforcement of the plea agreement at a new sentencing before a different judge. Finally, we conclude that Judge Lang-

hoff properly denied Neuaone's motion for recusal pursuant to Wɪs. Sᴛᴀᴛ. § 757.19(2)(g). We affirm the judgment of conviction.

*By the Court.*—Judgment affirmed.