**2020 WI App 28**

# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.:        2019AP695-CR

Complete Title of Case:

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JASON A. MARCOTTE,

DEFENDANT-APPELLANT.

| | |
|---|---|
| Opinion Filed: | April 14, 2020 |
| Submitted on Briefs: | February 4, 2020 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Stark, P.J., Hruz and Seidl, JJ. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the defendant-appellant, the cause was submitted on the briefs of *Kathilynne A. Grotelueschen*, assistant state public defender, Madison. |
| Respondent ATTORNEYS: | On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Joshua L. Kaul*, attorney general, and *Sarah L. Burgundy*, assistant attorney general. |

**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**April 14, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

| | |
|---|---|
| **Appeal No.    2019AP695-CR** | **Cir. Ct. No. 2017CF19** |
| **STATE OF WISCONSIN** | **IN COURT OF APPEALS** |

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

JASON A. MARCOTTE,

    DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Marinette County: JAMES A. MORRISON, Judge. *Reversed and cause remanded with directions*.

Before Stark, P.J., Hruz and Seidl, JJ.

¶1    STARK, P.J.   Jason Marcotte appeals a judgment convicting him of one count of delivering three grams or less of amphetamine, as a party to the crime. He also appeals an order denying his postconviction motion for resentencing.

Marcotte argues the judge who sentenced him after the revocation of his probation was objectively biased for two reasons. First, he contends the judge made multiple comments indicating that he had prejudged Marcotte's sentence. Second, Marcotte argues the judge was objectively biased as a result of his dual role as the sentencing judge in this case and as the presiding judge in a drug court program that Marcotte failed to complete. We agree with Marcotte that these factors, taken together, are sufficient to demonstrate objective bias. We therefore reverse and remand for Marcotte to be resentenced by a different judge.

## BACKGROUND

¶2 On February 7, 2017, the State filed a complaint charging Marcotte with delivering three grams or less of methamphetamine, as a party to the crime and as a second and subsequent offense. The complaint alleged that Marcotte and his girlfriend sold methamphetamine to a confidential informant during a controlled buy. The charge against Marcotte was a Class F felony, which, without the enhancer, carried a maximum sentence of twelve and one-half years' imprisonment and a $25,000 fine. *See* WIS. STAT. §§ 939.50(3)(f), 961.41(1)(e)1. (2017-18).[1]

¶3 The parties ultimately reached a plea agreement, which was premised on Marcotte's participation in the Marinette County Treatment Drug Court program. Under the agreement, Marcotte agreed to plead no contest to the delivery of methamphetamine charge, without the second-and-subsequent-offense enhancer. The parties also agreed to jointly recommend that the circuit court withhold sentence and impose three years' probation with various conditions, including a requirement that Marcotte comply with all of the drug court's terms and conditions. During a

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

plea hearing on August 31, 2017, the circuit court, the Honorable James A. Morrison presiding, accepted Marcotte's plea, found him guilty, ordered a presentence investigation report (PSI), and set the matter for sentencing.

¶4 Marcotte began participating in drug court on October 2, 2017—nearly four weeks before his sentencing hearing. Judge Morrison presided over the drug court proceedings. During a drug court hearing on October 16, 2017, Judge Morrison cautioned Marcotte against driving without a license, advising him that "conviction of another offense is grounds for immediate discharge from the [drug court] program." Judge Morrison continued, "And in your case, discharge from the program means you get sentenced and you go to Dodge." It is undisputed that Judge Morrison was referring to Dodge Correctional Institution, a prison located in Waupun, Wisconsin.

¶5 Thereafter, at Marcotte's sentencing hearing on October 27, 2017, Judge Morrison adopted the parties' joint recommendation, withheld sentence, and placed Marcotte on probation for three years. Among the conditions of probation was a requirement that Marcotte comply with all conditions of the drug court. During his sentencing remarks, Judge Morrison warned Marcotte that if he was not successful in drug court, there would be "no mercy" when Marcotte returned to court for sentencing after revocation of his probation.

¶6 Despite Judge Morrison's warning, Marcotte struggled in drug court. During a drug court hearing on January 8, 2018, Judge Morrison expressed frustration with Marcotte's performance, stating:

> And part of the reason that we're frustrated about this, Jason, is when you were asked whether you really wanted to do this, you said you'd try. You never volunteered 100 percent effort, you never told [a member of the drug court team] that you really were willing to do what's needed to do here, and

3

> apparently you think if you go to prison, it's going to be easier for you. Well, I'm sorry, my friend, we're not going to make it easier for you. Do you understand me?

¶7 At the next drug court hearing on January 22, 2018, Marcotte admitted he was "ready to give up on drug court and stuff for a while there." Judge Morrison then asked him, "Well, if you gave up on drug court, what would the consequence be?" Marcotte responded, "I'd go to prison." Judge Morrison then discussed with Marcotte what would happen if "you gave up on drug court, you went to prison."

¶8 Approximately one month later, Marcotte was terminated from drug court. Shortly thereafter, his probation was revoked based on his termination from drug court, his use of methamphetamine, his absconding from supervision, his failure to attend scheduled treatment sessions, and his failure to report changes in his address. In its revocation summary, the Department of Corrections (DOC) recommended that the circuit court sentence Marcotte to three to four years of initial confinement, followed by three to four years of extended supervision.

¶9 At Marcotte's sentencing after revocation hearing, the State similarly recommended that the circuit court impose four years' initial confinement, with eligibility for the Substance Abuse Program after two years, followed by four years' extended supervision. Marcotte's attorney did not make a specific sentence recommendation. He argued, however, that "whatever sentence the Court does order" should include eligibility for the Substance Abuse Program.

¶10 Judge Morrison ultimately imposed a ten-year sentence, consisting of five years' initial confinement (with eligibility for the Substance Abuse Program after three years) and five years' extended supervision. During his sentencing remarks, Judge Morrison emphasized his significant familiarity with Marcotte's circumstances based on Marcotte's participation in drug court. He elaborated:

> I don't know exactly how many drug court sessions we had, it was many. I know we spent many hours talking about your various problems when we were staffing this program week after week. And I don't say that because I'm beating up on you, I'm just pointing out that I am very familiar with your circumstances, with the circumstances of [Marcotte's girlfriend], with the circumstances with respect to your children because I've been sitting on those cases as well, so I have a very good grasp of—at least of the directory facts, so as to say, with respect to you, Mr. Marcotte.

¶11    Later on during his remarks, Judge Morrison similarly stated that because of Marcotte's participation in drug court, he knew Marcotte better than ninety-nine percent of the people he had to sentence. Judge Morrison explained, "I've basically lived with you every Monday for more than a year, and so I got my arms around your problem much better than most." He continued, "[The] PSI was helpful, but not nearly as helpful as the advantages I just talked about of actually seeing—seeing how you did this and how you did in drug court."

¶12    Judge Morrison also expressed frustration during his sentencing remarks about Marcotte's failure in drug court. He stated:

> And I think that it is clear that the drug court was not the answer for you, at least not that—the time around that you did it. An understandable frustration of the drug court team is my God, we gave him every tool, why didn't he just grab them, and I understand that, and I understand the—you know, that we could all say let's just throw the book at this guy because he really screwed up. Well, you did really screw up repeatedly in every way imaginable, frankly. You let down yourself. You let down [your girlfriend]. You let down the team. Most importantly, you let down your children and yourself.

Judge Morrison later stated, "Have you frustrated me over the time you've been in the drug court? Absolutely. Have you frustrated every member of the team? Of course." In addition, he stated Marcotte was never "all in" with respect to drug court and was never "willing to surrender to the rest of us who understood better and had

your best interest at heart more than you did, frankly." He described Marcotte's "demeanor throughout the drug court" as "frustrating, to put it mildly."

¶13    In conclusion, Judge Morrison stated Marcotte needed a sentence that would provide close rehabilitative control. He explained, "[Y]ou failed on probation. You failed on drug court. You are going to prison. There is no choice."

¶14    Marcotte subsequently filed a postconviction motion seeking resentencing. He argued Judge Morrison "demonstrated objective bias when [he] relied upon information [he] received as the judge presiding over Drug Court and prejudged Mr. Marcotte's sentence after revocation, thereby violating Mr. Marcotte's due process right to be sentenced by an impartial court."

¶15    Judge Morrison denied Marcotte's postconviction motion, following a nonevidentiary hearing. Judge Morrison asserted he should not be criticized for being invested in the success of drug court participants and for being disappointed when those individuals are not successful, as judicial engagement is "one of the pillars of drug court success." Judge Morrison also characterized his comments about Marcotte going to prison if he failed drug court as "completely appropriate" and explained that he routinely makes such comments to motivate drug court participants. Judge Morrison acknowledged that he is not required to send every person who fails drug court to prison. He stated, however, that

> [t]he alternative in the Marinette County Drug Court for failure is almost always going to be prison, because regrettably, it's always felonies, there are almost always multiple felonies, and the conduct has almost always occurred in the past, so the factors that would normally cause me to send somebody to prison almost always apply.

Marcotte now appeals, arguing Judge Morrison erred by denying his postconviction motion for resentencing.[2]

## DISCUSSION

¶16   "The right to an impartial judge is fundamental to our notion of due process." *State v. Goodson*, 2009 WI App 107, ¶8, 320 Wis. 2d 166, 771 N.W.2d 385.   Whether a judge was unbiased is a question of law that we review independently. *Id.*, ¶7.  In so doing, "[w]e begin with a presumption that the judge is free of bias and prejudice[,] and the burden is on the party asserting judicial bias to show by a preponderance of the evidence that the judge is biased or prejudiced." *State v. Neuaone*, 2005 WI App 124, ¶16, 284 Wis. 2d 473, 700 N.W.2d 298.

¶17   In this case, Marcotte argues that Judge Morrison was objectively biased.[3] Objective bias can exist in two situations:  (1) where there is an appearance of bias; and (2) where objective facts demonstrate that a judge treated a party unfairly.   *Goodson*, 320 Wis. 2d 166, ¶9.   Here, Marcotte contends

---

[2]  As noted above, Marcotte's judgment of conviction states Marcotte was convicted of one count of delivering three grams or less of *amphetamine*, as a party to the crime.  Both the criminal complaint and Information, however, state Marcotte was charged with one count of delivering three grams or less of *methamphetamine*.  During the plea hearing, Marcotte indicated he was entering a no-contest plea to a charge of delivering methamphetamine.  Nonetheless, the plea questionnaire and waiver of rights form states Marcotte was entering a no-contest plea to "Delivery of Amphetamine."

The parties do not raise any issue on appeal regarding whether Marcotte's judgment of conviction should have listed the crime of conviction as delivery of amphetamine or as delivery of methamphetamine, both of which are prohibited by WIS. STAT. § 961.41(1)(e)1.  We therefore do not address that issue.  On remand, however, the circuit court should consider whether Marcotte's judgment of conviction should be amended to reflect a conviction for delivery of methamphetamine, rather than delivery of amphetamine.

[3]  A judge may also be subjectively biased. *See State v. Gudgeon*, 2006 WI App 143, ¶20, 295 Wis. 2d 189, 720 N.W.2d 114.  Subjective bias is present when a judge has personal doubts as to whether he or she can be impartial. *Id.*  Because Marcotte does not allege that Judge Morrison was subjectively biased, we do not address that issue.

Judge Morrison's conduct gave rise to the appearance of partiality. The appearance of partiality constitutes objective bias when a reasonable person would conclude "that the average judge could not be trusted to 'hold the balance nice, clear, and true' under all the circumstances." *Id.* (citation omitted). Stated differently, "[w]hen the appearance of bias reveals a great risk of actual bias, the presumption of impartiality is rebutted, and a due process violation occurs." *State v. Herrmann*, 2015 WI 84, ¶46, 364 Wis. 2d 336, 867 N.W.2d 772.

¶18 Applying these standards to the instant case, we conclude Marcotte has met his burden to demonstrate objective bias, based on the combined effect of: (1) Judge Morrison's comments indicating he had determined before the sentencing after revocation hearing that Marcotte would be sentenced to prison if he did not succeed in drug court; and (2) Judge Morrison's dual role as the presiding judge in the drug court proceedings and as the judge who sentenced Marcotte after the revocation of his probation. Taken together, these factors created the appearance of bias sufficient to give rise to a great risk of actual bias.

¶19 As noted above, at various times before Marcotte's sentencing after revocation hearing, Judge Morrison communicated to Marcotte that he would be sentenced to prison if he did not succeed in drug court. In particular, Judge Morrison expressly told Marcotte during one drug court hearing that if he was discharged from the drug court program, he would "get sentenced and … go to Dodge." Judge Morrison also warned Marcotte during his original sentencing hearing that if he did not succeed in drug court, there would be "no mercy" when Marcotte returned for sentencing after revocation. Judge Morrison followed through on that promise at Marcotte's sentencing after revocation hearing, imposing a sentence longer than those requested by both the State and the DOC. Moreover, Judge Morrison stated during the sentencing after revocation hearing that because

Marcotte had failed in drug court, he had "no choice" but to sentence him to prison. A reasonable person would interpret these comments to mean that Judge Morrison had decided long before Marcotte's sentencing after revocation hearing that he would impose a prison sentence if Marcotte was terminated from drug court.

¶20 Several of our prior decisions illustrate that comments indicating a circuit court has prejudged a defendant's sentence can give rise to objective bias. For instance, in *Goodson*, the circuit court told Goodson at his initial sentencing hearing that if his probation or extended supervision was revoked, he would receive the maximum sentence. *Goodson*, 320 Wis. 2d 166, ¶1. When Goodson's extended supervision was later revoked, the court followed through with its promise and imposed the maximum sentence. *Id.*, ¶5. The court expressly referred to its earlier promise to impose the maximum sentence during its remarks at the sentencing after revocation hearing. *Id.*

¶21 On appeal, we concluded Goodson was entitled to resentencing because the circuit court "unequivocally promised to sentence Goodson to the maximum period of time if he violated his supervision rules." *Id.*, ¶13. That promise gave rise to the appearance of bias because "[a] reasonable person would conclude that a judge would intend to keep such a promise—that the judge had made up his mind about Goodson's sentence before the reconfinement hearing." *Id.* We explained, "A court may certainly tell a defendant what *could* happen if his or her extended supervision is revoked. But telling a defendant what *will* happen imperils the defendant's due process right to an impartial judge at a reconfinement hearing." *Id.*, ¶17. Stated differently, when a judge has prejudged a defendant's sentence, he or she "cannot render a decision that comports with due process." *Id.*

9

¶22    We reached a similar conclusion in *State v. Gudgeon*, 2006 WI App 143, 295 Wis. 2d 189, 720 N.W.2d 114. In that case, Gudgeon was placed on probation, but he still owed a significant amount of restitution when his probation was about to expire. *Id.*, ¶¶2-3. His probation agent wrote to the circuit court and recommended that the court convert Gudgeon's restitution obligation to a civil judgment instead of extending Gudgeon's probation. *Id.*, ¶3. Before the extension hearing, the court wrote a note on the agent's letter stating it wanted Gudgeon's probation extended. *Id.*, ¶¶3-4. On appeal, we concluded the court's note gave rise to the appearance of partiality sufficient to demonstrate objective bias. *Id.*, ¶26. We explained, "The ordinary reasonable person would discern a great risk that the trial court in this case had already made up its mind to extend probation long before the extension hearing took place." *Id.*

¶23    Similarly, in *State v. Lamb*, No. 2017AP1430-CR, unpublished slip op. ¶11 (WI App Sept. 25, 2018),[4] we concluded Lamb had demonstrated objective bias by "showing a serious risk that [the circuit court] prejudged his sentence." The circuit court in *Lamb* was aware the parties planned to recommend that the court place Lamb on probation. *Id.*, ¶14. However, before the parties made their sentencing arguments, the court made statements indicating it did not intend to follow their joint recommendation. *Id.*, ¶¶14-15. We concluded those statements demonstrated a serious risk that the judge "had already made up his mind about what kind of sentence Lamb would receive." *Id.*, ¶16.

¶24    *Goodson*, *Gudgeon*, and *Lamb* support our conclusion that Judge Morrison's remarks in this case—i.e., those remarks indicating that Marcotte

---

[4] Pursuant to WIS. STAT. RULE 809.23(3)(b), authored, unpublished opinions issued after July 1, 2009, may be cited for their persuasive value.

would receive a prison sentence if he did not succeed in drug court—gave rise to the appearance of bias evidencing a great risk of actual bias. The State argues *Goodson* is distinguishable because the circuit court there promised to impose a specific term of incarceration, which Judge Morrison did not do in this case. Be that as it may, our conclusion in *Goodson* that the court was objectively biased did not turn on the specificity of its promise. Instead, our decision was based on the fact that the court told the defendant what *would* happen if his extended supervision was revoked, rather than merely explaining what *could* happen. *See Goodson*, 320 Wis. 2d 166, ¶17. Similarly, in this case, Judge Morrison went beyond merely informing Marcotte of what *could* happen if he failed drug court and instead informed him of what *would* happen if he failed.

¶25 The State also argues that *Gudgeon* and *Lamb* are distinguishable because in both of those cases there were multiple options available to the respective circuit courts other than those that the courts promised to impose. In *Gudgeon*, for instance, the court could have converted the defendant's restitution obligation to a civil judgment instead of extending his probation. *See Gudgeon*, 295 Wis. 2d 189, ¶3. In *Lamb*, the court could have placed the defendant on probation, rather than imposing a prison sentence. *See Lamb*, No. 2017AP1430-CR, ¶6. In contrast, the State argues the "only reasonable option left for Marcotte" after he failed drug court was a prison sentence. The State contends, "[H]ad the judge here told Marcotte that more probation or other sanctions were possible if he was revoked, that wouldn't have been true."

¶26 We disagree. As Marcotte correctly notes, a prison sentence was not the only option available to Judge Morrison after Marcotte was terminated from drug court and his probation was therefore revoked. Judge Morrison could have instead imposed a fine, a time-served sentence, a period of home detention, or a jail

sentence of up to one year. *See* WIS. STAT. §§ 939.50(3)(f), 973.02, 973.03(4)(a), 973.05. Depending on Marcotte's progress in drug court, any of those alternatives may have been reasonable, even if Marcotte was ultimately terminated from the program. Judge Morrison's comments, however, show that he rejected those alternatives—or decided he would not even consider them—long before Marcotte's sentencing after revocation hearing took place.

¶27 The State also argues Judge Morrison's comments did not give rise to the appearance of bias because the parties understood at the time of Marcotte's original sentencing "that if Marcotte's conduct caused him to be terminated from drug court, prison was the only viable option." The State does not explain, however, why the parties' understanding of the available options is relevant to the objective bias analysis. As explained above, objective bias exists when a reasonable person would conclude "that the average judge could not be trusted to 'hold the balance nice, clear, and true' under all the circumstances." *Goodson*, 320 Wis. 2d 166, ¶9 (citation omitted). Here, upon hearing Judge Morrison's comments indicating that Marcotte would receive a prison sentence if he was terminated from drug court, a reasonable person would conclude there was a great risk that Judge Morrison had prejudged Marcotte's sentence and therefore could not be trusted to "hold the balance nice, clear, and true" when sentencing Marcotte after the revocation of his probation. *See id.* (citation omitted).

¶28 In any event, Judge Morrison's comments that Marcotte would receive a prison sentence if he failed drug court are not the only reason to conclude that Judge Morrison was objectively biased. Instead, we must also consider Judge Morrison's dual role as both the judge who presided over the drug court proceedings and as the judge who imposed Marcotte's sentence after revocation. That dual role

12

contributes to our conclusion that Judge Morrison was objectively biased under the circumstances of this case for three reasons.

¶29     First, a judge who presides over drug court may become personally invested in a defendant's success in the program. Here, Judge Morrison's comments during the sentencing after revocation hearing demonstrate a high level of personal investment in Marcotte's case. In particular, Judge Morrison made multiple comments during that hearing indicating that he was personally frustrated by Marcotte's failure to complete the drug court program. Judge Morrison also commented that he, and the other members of the drug court team, had Marcotte's "best interest at heart" more than Marcotte did.

¶30     Marcotte concedes, and we agree, that as a general matter a court's investment in a defendant's rehabilitation is appropriate, and as Judge Morrison noted, judicial engagement is "one of the pillars of drug court success." However, we also agree with Marcotte that Judge Morrison's comments during the sentencing after revocation hearing would lead a reasonable person to conclude that Judge Morrison could not be impartial when sentencing Marcotte. Specifically, a reasonable person would conclude there was a great risk that Judge Morrison's personal frustration with Marcotte's failure in drug court would lead him to impose a harsher sentence than he would have otherwise imposed had he not presided over the drug court proceedings.

¶31     Second, we observe that when a judge makes comments during drug court proceedings indicating that a defendant will receive a certain sentence if he or she is terminated from drug court, the judge has an institutional interest in following through on that promise if the defendant is later terminated and his or her probation is revoked. The judge's comments during the drug court proceedings are made in

front of other drug court participants and the drug court team, and if the judge fails to act in accordance with those comments when sentencing one participant, the judge risks undermining his or her credibility with both the other participants and the team. This dynamic further adds to the appearance of bias in the instant case, where Judge Morrison indicated during drug court hearings that Marcotte would receive a prison sentence if he was terminated from drug court.

¶32     Third, a drug court judge receives significant amounts of ex parte information about drug court participants that no other judge would have access to when sentencing those individuals.[5]  As noted in the Marinette County Treatment Drug Court Policies and Procedures Manual, in addition to proceedings held on the record, the drug court team holds regular closed staffings. MARINETTE COUNTY TREATMENT DRUG COURT POLICIES AND PROCEDURES MANUAL 9 (rev. May 8, 2017),        https://www.marinettecounty.com/i/f/HHSD/Drug%20Court/drug court%20policyandproceduresmanual%20updated%205-17.pdf.    During those staffings, the drug court team "advise[s] the Treatment Drug Court Judge of the progress or any violation of each Treatment Drug Court Participant." *Id.*   In addition, the drug court judge has sole and exclusive control of the drug court files, which are confidential, are not open to the public, and are separate from circuit court files. *Id.*

¶33     Thus, by virtue of his role as drug court judge, Judge Morrison had access to information about Marcotte that was discussed outside Marcotte's presence and to which no other judge, or the public, would have access.

---

[5] Notably, a drug court judge's receipt of such ex parte information is expressly permitted by SCR 60.04(1)(g)6., which states that a judge assigned to a "therapeutic, treatment or problem-solving docket" may "initiate, permit, engage in or consider ex parte communications knowingly waived by a participant."

Judge Morrison acknowledged as much during the sentencing after revocation hearing when he stated he was "obviously very familiar with [Marcotte's] circumstances" based on the "many hours" the drug court team had spent "talking about [his] various problems when we were staffing this program week after week." In fact, Judge Morrison stated that because of Marcotte's participation in drug court, he knew Marcotte better than ninety-nine percent of the people he had to sentence. Moreover, Judge Morrison acknowledged that he relied on the information he had received during the drug court proceedings when determining Marcotte's sentence after revocation, stating, "[The] PSI was helpful, but not nearly as helpful as the advantages I just talked about of actually seeing—seeing how you did this and how you did in drug court."

¶34    Marcotte, however, was not present during the drug court team's closed staffings, and there is no evidence in the record that an attorney representing him attended any of those staffings.[6]  As a result, Marcotte did not know what information Judge Morrison received during the drug court staffings.  Accordingly, Marcotte had no opportunity to correct, explain, or otherwise respond to that information.  We agree with Marcotte that these circumstances support a finding of objective bias because they support a conclusion that Judge Morrison sentenced

---

[6] Standards published by the Wisconsin Association of Treatment Court Professionals require that a drug court team include a defense attorney "who, among other duties, ensures participants' constitutional rights are protected and generally advocates for participant[s'] stated legal interests."  WISCONSIN ASS'N OF TREATMENT COURT PROF'LS, WISCONSIN TREATMENT COURT STANDARDS 6 (rev. 2018), https://www.watcp.org/wp-content/uploads/2018/12/FINAL-WI-Treatment-Court-Standards-2018.pdf.  However, "[d]efense counsel as a member of the treatment court team does not represent individual participants." *Id.* at 10.  Although drug court participants have the right "to request the presence of defense counsel (including private bar attorneys) to attend the team staffings," *see id.* at 7, there is no evidence in the record that Marcotte was represented by counsel during any of the drug court staffings in this case.

Marcotte based at least in part on ex parte information that he received during the drug court proceedings, to which Marcotte had no opportunity to respond.

¶35    The State observes that Marcotte began participating in drug court before his original sentencing, and the PSI author "interviewed the drug treatment court coordinator and incorporated her comments on [Marcotte's] progress in the PSI."  The State further observes that at the sentencing after revocation hearing, both the parties and the circuit court had access to the DOC's revocation summary, which "detailed Marcotte's record in drug court and meetings with the drug court coordinator."  The State therefore suggests that even if a different judge had presided over Marcotte's sentencing after revocation hearing, the PSI and revocation summary would have provided that judge with access to the same information as Judge Morrison regarding Marcotte's performance in drug court.

¶36    We are not persuaded.  Although the PSI and revocation summary contain some information about Marcotte's performance in drug court, there is nothing in the record to support a conclusion that those documents contain all of the information that Judge Morrison received about Marcotte during the closed drug court staffings and subsequently relied upon at Marcotte's sentencing after revocation.  Again, as Marcotte was not present during the staffings, he had no way of knowing what information Judge Morrison received and therefore had no opportunity to respond to that information.

¶37    We are not alone in questioning whether a judge who has presided over drug court proceedings involving a defendant can remain unbiased when he or she is later called upon to sentence that defendant.  The Drug Court Judicial Benchbook notes that "[s]ome commentators have taken the position that drug court judges should not sentence participants who are terminated from their programs

16

because they have a heightened familiarity with the case, and thus may not be adequately neutral." NATIONAL DRUG COURT INSTITUTE, DRUG COURT JUDICIAL BENCHBOOK 41 (rev. Feb. 2017), https://www.ndci.org/wp-content/uploads/2016/05/Judicial-Benchbook-2017-Update.pdf. The benchbook therefore opines that the "safest position" is "to offer the offender the option to be sentenced by the drug court judge or by another neutral magistrate, and to entertain petitions for recusal if they are proffered by either the defense or prosecution." *Id.*

¶38    In addition, in 2011, the Wisconsin Court System Planning and Policy Advisory Subcommittee adopted a report entitled "Wisconsin Treatment Courts: Best Practices for Record-keeping, Confidentiality & Ex Parte Information," which was authored by a committee of Wisconsin judges and court professionals. As relevant here, that report provides:

> Judges must carefully consider how participation in treatment court may affect their decisions. A treatment court judge has more information about each offender than in the ordinary criminal case, but most of it is learned in treatment team meetings and reports and is never made part of the court record. Judges also report forming a strong emotional connection with certain offenders after working with them in treatment court, affecting impartiality or at least the appearance of impartiality. If the judge relies on information that is unsupported by the court record, the confidentiality of those records may be compromised by the judge's reliance on them. For these reasons, judges must be very cautious about taking action in the criminal case based on information they have learned from participating in the treatment team.

WISCONSIN TREATMENT COURTS: BEST PRACTICES FOR RECORD-KEEPING, CONFIDENTIALITY & EX PARTE INFORMATION 9 (Dec. 2011), https://www.wicourts.gov/courts/programs/docs/treatmentbestpractices.pdf (hereinafter, "Best Practices Report").

¶39    In light of these concerns, the Best Practices Report recommends "that a judge should not sentence an offender after participating … in treatment court." *Id.* at 10.  The report then suggests several ways in which judges can achieve that result "without much difficulty."  *Id.*  For instance, the report states that "[i]n a number of Wisconsin treatment courts, the judge imposes and stays a sentence before referring the offender to treatment court.  If the offender fails the program, the sentence is imposed automatically, without reliance on any information subsequently acquired through the treatment court program."  *Id.*  Alternatively, if a court withholds sentence pending a defendant's participation in drug court, the court "should work out protocols, with the involvement of other team agencies, to reassign the case to a new judge for sentencing.  In one-judge counties, the number of sentencings will be small enough to be easily handled by a visiting judge."  *Id.* Finally, the Best Practices Report states that if a judge "decides to impose sentence after … the defendant is terminated from treatment court, a comprehensive waiver should be used."  *Id.*  Judge Morrison did not follow any of these recommended procedures in the instant case.

¶40    Notably, we do not hold that a judge who has presided over drug court proceedings involving a particular defendant can never sentence that defendant after the revocation of his or her probation.  Whether a judge is objectively biased under those circumstances must be determined on a case-by-case basis.  Here, the record contains other evidence of objective bias, beyond the mere fact that Judge Morrison presided over both the drug court proceedings and Marcotte's sentencing after revocation.  Specifically, the record shows that Judge Morrison:  (1) made multiple comments indicating he had prejudged Marcotte's sentence; (2) repeatedly referred to his personal frustration with Marcotte's failure in drug court during the sentencing after revocation hearing; and (3) expressly stated when imposing

Marcotte's sentence after revocation that he was relying on information he had learned during the drug court proceedings.

¶41 Taken together, these factors give rise to an appearance of bias that is sufficient to reveal a great risk of actual bias. Moreover, that great risk of actual bias was borne out by the fact that Judge Morrison ultimately imposed a sentence after revocation that was longer than those recommended by both the State and the DOC. Accordingly, Marcotte has met his burden to overcome the presumption that Judge Morrison was unbiased, and we therefore reverse and remand for Marcotte to be resentenced by a different judge.

¶42 Under these circumstances, there is no need for us to render an advisory opinion as to whether a judge's dual role in presiding over both drug court proceedings and a defendant's sentencing after revocation, without more, gives rise to objective bias. Nevertheless, similar to the authors of the Drug Court Judicial Benchbook and the Best Practices Report, we caution circuit courts that presiding over both a defendant's drug court proceedings and his or her sentencing after revocation raises significant concerns regarding partiality. Consequently, the better practice would be for different judges to preside over a defendant's drug court proceedings and his or her sentencing after revocation. Alternatively, a court may avoid this issue by imposing and staying a prison sentence for a drug court participant in the first instance, instead of withholding sentence as Judge Morrison did in this case. Imposing and staying a sentence is particularly appropriate if a judge is convinced at the outset—as Judge Morrison apparently was here—that a

prison sentence would be the only appropriate disposition if the defendant were to fail drug court.[7]

¶43 Finally, we acknowledge the concern Judge Morrison raised during Marcotte's postconviction hearing that in counties with few circuit court judges, arranging for a judge other than the drug court judge to preside over a defendant's sentencing after revocation may pose some difficulty. However, as the Best Practices Report notes, even in single-judge counties, the number of cases in which this scenario arises should be small enough "to be easily handled by a visiting judge." BEST PRACTICES REPORT at 10. And ultimately, maintaining the integrity of the judicial system is more important than the minor inconvenience that may arise from a judicial substitution. Furthermore, we again observe that a judge may avoid this potential inconvenience by imposing and staying a sentence for a drug court participant in the first instance, rather than withholding sentence.

*By the Court.*—Judgment and order reversed and cause remanded with directions.

---

[7] Notably, if Judge Morrison had imposed and stayed Marcotte's sentence in the first instance, rather than withholding sentence, his statements during the drug court proceedings about Marcotte going to prison if he failed drug court may have been an appropriate means of motivating Marcotte. Judge Morrison also could have appropriately made those statements during drug court if he had he recused himself from Marcotte's criminal case once it became clear that Marcotte would be participating in drug court. Under either of those scenarios, there would be no appearance of bias because regardless of Judge Morrison's statements during the drug court proceedings, Judge Morrison would not be tasked with exercising his sentencing discretion in the event Marcotte was terminated from drug court.