COURT OF APPEALS
DECISION
DATED AND FILED

October 12, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP2174**

STATE OF WISCONSIN

Cir. Ct. No. 2018JV62

IN COURT OF APPEALS
DISTRICT II

---

IN THE INTEREST OF B.S.S., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

    PETITIONER,

  V.

B.S.S.,

    RESPONDENT.

---

APPEAL from orders of the circuit court for Manitowoc County: MARK ROHRER, Judge. *Affirmed.*

¶1 GROGAN, J.[1] B.S.S. appeals from orders[2] denying her motion to stay the requirement that she register as a juvenile sex offender. She argues that she is entitled to a new hearing on her motion to stay in front of a different judge because: (1) the circuit court's comments about ordering her to register during an earlier hearing evidenced the circuit court's actual bias, which should have triggered recusal; and (2) the circuit court erroneously exercised its discretion in denying her motion to stay because it failed to link her risk of re-offending to its consideration of the need to protect the public. This court affirms.

## I. BACKGROUND

¶2 In April 2018, the State filed a delinquency petition against B.S.S. in Manitowoc County alleging she committed two counts of first-degree sexual assault against a child under the age of thirteen. At the time the State filed the petition, B.S.S. was fifteen years old, and her victim was an eight-year-old boy who had reported that B.S.S. had been sexually assaulting him since he was four or five years old. B.S.S. (whose mother was good friends with the victim's mother) began assaulting the victim by showing him a pornographic video and teaching him how to kiss like the people in the video. The assaults then progressed to touching each other sexually and culminated in sexual intercourse.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] Specifically, she appeals from the August 21, 2019 Dispositional Order and the November 24, 2021 order denying her postdispositional motion to modify the Dispositional Order.

These assaults occurred over four years in three different counties,[3] either when B.S.S. lived with the victim's family or nearby. The victim reported that B.S.S. told him not to tell anyone.

¶3    After a series of delays not pertinent here, B.S.S. entered no-contest pleas to reduced charges on June 4, 2019. She pled to third-degree sexual assault, contrary to WIS. STAT. § 940.225(3), and exposing genitals to a child, contrary to WIS. STAT. § 948.10(1)(b), and the circuit court thereafter entered an order adjudicating B.S.S. delinquent under WIS. STAT. § 938.12. At the plea hearing, after the circuit court accepted B.S.S.'s pleas, the prosecutor and B.S.S.'s lawyer disagreed about whether the circuit court should immediately proceed to disposition. B.S.S.'s lawyer wanted to delay disposition to obtain a psychosexual evaluation from an expert. The prosecutor objected because this case had been pending for over one year and because the court would likely have the Manitowoc County Human Services Department (Department) conduct an evaluation regardless of what the defense expert concluded. The circuit court denied the defense request for delay, noting the Department would do an evaluation, but not until after disposition, and because it was concerned about the victim's rights due to the case having been pending for "a significant period of time[.]" The circuit court explained that "under the law [B.S.S. is] required to report" to the sex

---

[3] The three counties were Manitowoc, Kewaunee, and Washington. This court notes that B.S.S., in both her first brief and her Reply brief, incorrectly identifies this case as arising in Milwaukee County, and in her first brief lists this case as "On Appeal from Order Terminating Parental Rights[.]" Although this court certainly understands that attorneys need not create every cover sheet from scratch, it is important to make sure the first page of the brief correctly identifies the appeal. Additionally, the court acknowledges B.S.S.'s complaint in her Reply brief about careful attention to detail—particularly the State's repeated failure to properly format and cite quotations and cases referenced throughout its brief—and assures B.S.S. that this court gives every appellant and respondent its careful attention. That said, parties filing briefs in appellate courts should take the time to properly format work product and follow applicable citation rules.

offender registry and that any dispositional order could be amended later by motion. B.S.S.'s lawyer indicated he "want[ed] the [c]ourt to have some expert opinion on [B.S.S.'s] level of risk before it decides whether or not to stay the [sex offender] reporting." The circuit court set the disposition date for June 28th.

¶4      At a hearing on June 11, 2019, the circuit court addressed B.S.S.'s request to provide funding for her to obtain a psychosexual evaluation. The circuit court seemingly saw B.S.S.'s request as unnecessary because the statutes required it to make B.S.S. "subject to the [sex offender] registry[,]" specifically noting that, based on "the charge that has been pled to and the age" of the victim, the statutory exceptions to sex offender registration in WIS. STAT. § 301.45(1m) did not apply in this case. When B.S.S.'s lawyer explained he wanted the evaluation because he planned to ask the court to stay the sex-offender-registration requirement, the State responded that, based on B.S.S.'s adjudication of third-degree sexual assault, this case falls under WIS. STAT. § 938.34(15m)(bm), which says "the court shall require the juvenile to comply with the reporting requirements," and the only way to avoid that mandate is through "a motion made by the juvenile[.]" *Id.* The circuit court agreed that in order to stay B.S.S.'s sex-offender-registration requirement, she would need to file a motion "requesting that [she] not be subject to the sex offender registry[.]"

¶5      B.S.S. did not file a motion to stay the sex-offender-registration requirement at the June 11, 2019 hearing, but instead filed a motion to adjourn the June 28th disposition date, so she "could obtain a sex offender psychosexual evaluation[.]" B.S.S. acknowledged that the only way she could avoid registering as a sex offender was if the circuit court stayed the requirement pursuant to WIS.

4

STAT. § 938.34(16)[4] because: (1) her crime fell under § 938.34(15m)(bm),[5] which says "the court *shall* require the juvenile to comply with the reporting requirements" (emphasis added); and (2) B.S.S.'s victim was under twelve years old at the time she assaulted him, and therefore the statutory exceptions in WIS. STAT. § 301.45(1m) allowing a sexual offender to avoid registration do not apply.

¶6      On June 14, 2019, the State objected to B.S.S.'s motion. It said the statutes required B.S.S. to file a motion to stay if she wanted to ask the circuit

---

[4] WISCONSIN STAT. § 938.34(16), which addresses staying an order, states that:

> After ordering a disposition under this section, [the court may] enter an additional order staying the execution of the dispositional order contingent on the juvenile's satisfactory compliance with any conditions that are specified in the dispositional order and explained to the juvenile by the court. If the juvenile violates a condition of his or her dispositional order, the agency supervising the juvenile or the district attorney or corporation counsel in the county in which the dispositional order was entered shall notify the court and the court shall hold a hearing within 30 days after the filing of the notice to determine whether the original dispositional order should be imposed, unless the juvenile signs a written waiver of any objections to imposing the original dispositional order and the court approves the waiver. If a hearing is held, the court shall notify the parent, juvenile, guardian, and legal custodian, all parties bound by the original dispositional order, and the district attorney or corporation counsel in the county in which the dispositional order was entered of the time and place of the hearing at least 3 days before the hearing. If all parties consent, the court may proceed immediately with the hearing. The court may not impose the original dispositional order unless the court finds by a preponderance of the evidence that the juvenile has violated a condition of his or her dispositional order.

[5] B.S.S. pled to third-degree sexual assault, contrary to WIS. STAT. § 940.225(3), which is listed in WIS. STAT. § 938.34(15m)(bm) ("If the juvenile is adjudicated delinquent on the basis of a violation … of s. … 940.225 (1), (2), or (3) … the court shall require the juvenile to comply with the reporting requirements under s. 301.45 unless the court determines, after a hearing on a motion made by the juvenile, that the juvenile is not required to comply under s. 301.45 (1m).").

court to stay her sex-offender-registration requirements under WIS. STAT. § 938.34(16).

¶7     The circuit court held a hearing on June 14, 2019 to address B.S.S.'s motion to adjourn for the purpose of obtaining a psychosexual evaluation, and the circuit court ultimately denied the request.  It found that B.S.S. did not file a motion to stay the sex-offender-registration requirement, but in deciding the motion to adjourn, the court nevertheless discussed the law pertinent to what factors a circuit court looks at when evaluating a motion to stay sex offender registration.  After listing all the factors, the circuit court noted B.S.S.'s request for a psychosexual evaluation would address only one of the factors a court is required to consider—namely, B.S.S.'s "likeliness to reoffend."  *See* WIS. STAT. § 938.34(15m)(c)5 ("The probability that the juvenile will commit other violations in the future.").  The circuit court then, "purely for the sake of this record," concluded that even if it assumed a psychosexual evaluation resulted in the "best case scenario" for B.S.S.—that she would "not reoffend in the future"—this single factor could not overcome the court's "concern about protecting the public" based on the "other factors" it would be required to consider, including "the seriousness of the offense."  It explained:

> Let's focus on the seriousness of the offense.  We have a situation here where in the beginning of this situation, there was grooming behavior going on by the juvenile against a young person around four to five years of age.  At the time, that made her roughly about 12.  That type of behavior is very serious and very concerning, because this isn't just someone just trying to experiment.  There's grooming going on when saying where to hide the [pornography] tape and educating a child about this, and telling the child to be quiet, as has been said in the complaint, if I recall.
>
> Next, continuing with the seriousness of the offense, we have a situation here where these assaults are occurring over a number of years and in two different residences,

6

minimum, where this took place. Again, escalating the seriousness of the offense.

The type of behavior that was involved involved both sexual assaults involving oral sex between the parties, both vaginal and penile, but penile to vaginal intercourse as well. Again, the multiple types of actions taking place also enhances and aggravates the seriousness of the offense.

The difference in age between the juvenile and the victim is significant as is supposed to be looked at by factor one, which would warrant a finding of being appropriate to register for the sex offender registry.

The relationship between the juvenile and the victim of the violation. It's almost as if this young person, this juvenile, befriended this young boy and took advantage of him. Again, under that factor, another reason why she would register.

There is no bodily harm. The Court at this time is not aware of mental illness or deficiency on this young man. But even without that, again, based on as I go through these factors and the seriousness of the offense, the Court is going to require her to register.

Next, the probability that the juvenile will commit other violations in the future. Not only do we have this victim on multiple occasions being subject to sexual assaults by this juvenile, she also has been charged and she's currently under a consent decree in Washington County for another offense, a sexual offense.[6]

....

Again, any other factor that I deem relevant.... I would deem the multitudes of the assaults, the multiple locations where they took place, the grooming behavior.

And as such, again, even if, best case scenario, this Court would receive a report from [B.S.S.'s] expert stating that there's a substantial or significant likelihood that she would not reoffend in the future, even in spite of that, the

---

[6] At the time of this hearing, the circuit court mistakenly believed the victim in Washington County was a different person. It was not. At the dispositional hearing, the circuit court had the correct information.

Court when analyzing these factors and the seriousness of the offense, would require her to register as a sex offender.

As a result of that, the Court feels it would not be necessary to have a psycho-sex evaluation prior to disposition.

¶8    The circuit court emphasized that "for the sole purposes of" deciding B.S.S.'s motion to adjourn disposition to allow time for a psychosexual report, it would assume that report would be favorable to B.S.S. (that B.S.S. is "low risk, not going to offend, public not in danger"). It confirmed that even with such a report, it would require B.S.S. to register because "the seriousness of the offense" and all the other factors would outweigh a favorable psychosexual report.

¶9    B.S.S.'s lawyer then requested that the circuit court allow B.S.S. to file a motion to stay sex offender registration even though it appeared "the Court has indicated some prejudgment on this issue." The circuit court responded:

It's not a prejudgment, it's an analysis of the factors. Prejudgment means like I've decided this case before I walked out here and was going to do whatever I wanted no matter what. I made a judgment based upon what is contained in that complaint, based upon this juvenile's history.

Again, maybe the parties can explain to me at a later date, because I'm not going to grant the expert to do a psycho-sex evaluation for the reasons stated on this record.

¶10    After "an extensive conference with the attorneys off the record," the State recounted what the circuit court agreed to do. First, B.S.S. could file a motion to stay pursuant to WIS. STAT. § 938.34(16). Second, it ordered the Department to do a psychosexual evaluation. Third, the parties would meet the week of June 24th for the court "to enter a scheduling order with strict timelines" for the stay motion and to set a disposition date.

8

¶11    The dispositional hearing was set for August 21, 2019.   On August 14, 2019, after the parties met with the circuit court to confirm the hearing date, B.S.S. filed two motions:  (1) a motion to stay sex offender reporting under WIS. STAT. § 938.34(16); and (2) a motion for recusal under WIS. STAT. § 757.19. The State responded with a letter on August 15, 2019, noting that during the August 14th meeting with the circuit court, B.S.S. "never mentioned the filing of [these two] motions which would possibly delay the proceedings" and requested "that the court address these matters prior to the hearing so that the State may give the crime victims appropriate information as to what matters will be taken up next week."  On August 20, 2019, B.S.S. sent a letter to the court requesting it not rely on the psychosexual report from the court-appointed evaluator, Jane Lepak-Jostsons.   Lepak-Jostsons' report noted that, although "[t]here is no actuarial instrument for juvenile females to predict recidivism[,]" it was her opinion that B.S.S. "is at high-risk [to] commit another sexual assault or other criminal activity."

¶12    At the August 21, 2019 dispositional hearing, the circuit court began by addressing B.S.S.'s additional motions.  First, it denied B.S.S.'s motion for recusal, finding there were no grounds for it to conclude it could not be impartial. Second, it ruled it would follow the law as to whether to consider Lepak-Jostsons' report and determine what weight to afford it during the dispositional hearing. Third, it explained it would address B.S.S.'s motion to stay sex offender registration later during the dispositional portion of the hearing.

¶13    During the dispositional hearing, the victim's mother addressed the circuit court.  She explained to the circuit court that the "extremely graphic" nature of B.S.S.'s assaults on her son, which began "when he was three or four years old[,]" was "quite horrifying[.]"   She said her "eight year old had experienced"

9

things that she, even though she was in her "late 30's," had not experienced. She reported that she has "an all-horrifying fear that some day [her son] might himself become an offender" and has her son in counseling, hoping "to stop this cycle of abuse dead in its tracks." She said B.S.S. assaulted her son at the same time B.S.S. "had a boyfriend who was 17 or 18 years old[.]" She told the court that if she had known about the "youthful predator right in my own home I would have done more to protect my child. And I think there, I think other children need protection as well." She recounted that they did not see B.S.S. for a period of two years, but when they moved back to Manitowoc, "the abuse had picked up right back where it left off after a couple years separation. That fact was very significant for me."

¶14 B.S.S.'s lawyer then renewed the request for their own psychosexual evaluation and to adjourn disposition. The circuit court denied the request, noting it appointed a neutral examiner to perform the evaluation. Next, the circuit court asked B.S.S. what she was disputing with regard to disposition. Her lawyer explained that all the dispositional requests were joint, except that B.S.S. requested that the circuit court stay the sex-offender-registration requirement "until close to the end of her supervision[.]"

¶15 The State asked the circuit court to deny the request to stay sex offender registration. It focused on the seriousness of the offenses, the lengthy period of time over which the abuse occurred, and the fact that B.S.S. "sexually abuse[d] a much younger boy" whom she lived with at times "in different homes and different locations throughout this county and throughout the state." The State acknowledged that B.S.S. had been victimized herself, that she was in treatment, and that she herself was a juvenile. But, it emphasized that none of those factors changed the seriousness of the offense, the harm to this victim, the ongoing abuse

10

that did not stop until the victim reported it, and that it involved sexual intercourse with an eight-year old. Further, the State pointed out that although B.S.S. may do well while in a treatment center, "[h]er issues are deep [seated] and long term, and they are not going to disappear over night and they are not going to disappear during the length of the juvenile court order[,]" and in relatively short order, B.S.S. would be on her own in the community. The State argued that keeping B.S.S. on the juvenile sex offender registry would protect the public by limiting her ability to reside in "certain shelters and certain areas where people could be at risk" and would allow law enforcement and others to "keep tabs" on her. The State also argued keeping B.S.S. on the juvenile sex offender registry "would provide an additional protection to the community, and tool for law enforcement." The State reminded the circuit court that B.S.S. "has the burden to prove by clear and convincing evidence that based on the factors enumerated … a stay should be granted in her case."

¶16    B.S.S.'s lawyer acknowledged the seriousness of the offenses, the aggravating nature of the age difference, and the fact that the victim's young age could be considered a mental deficiency. B.S.S.'s lawyer, however, wanted to focus on "any other factor" and "the probability that the juvenile will commit other violations in the future." He then discussed B.S.S.'s troubled childhood and how the assaults perpetrated on her normalized sexual assault. He argued that registering as a juvenile sex offender does not decrease recidivism and that registration would not give B.S.S. any ongoing support—it might actually make it harder for her to find housing, get a job, or go to college. He pointed out that B.S.S.'s social worker described B.S.S. as "well behaved" and that, by waiting a year, the circuit court would be able to better gauge whether B.S.S. would be a risk to the public such that she should be ordered to register as a sex offender.

11

¶17   The circuit court asked B.S.S. if she would like to make a statement before it made its decision, but B.S.S. declined.  The circuit court then addressed all the pertinent factors.  First, it noted if this occurred in adult court, B.S.S. would be looking at potentially "60 years in a prison setting."  The court saw B.S.S.'s offenses as very serious, noting they took place "over a significant period of time" and started when the victim "was four to five years of age … until he was about eight or nine -- roughly from 2012 to 2017."  It found it aggravating that the assaults involved "multiple forms," including "both intercourse and oral intercourse"; occurred in different places in different counties; involved "a relationship of trust … developed over a period of time"; and involved "the closing of doors," which demonstrated B.S.S. planned to commit acts she knew to be wrong.  The court believed the "grooming process" that "[s]tarted with viewing pornography to then eventually progressing to intercourse" increased the "gravity of the offense."

¶18   Next, the circuit court noted the mitigating factors, including that B.S.S.:  (1) was herself a victim of sexual assault; (2) had experienced horrible things; and (3) was making progress, going to school, participating in sports, and participating in treatment.  But, it was concerned by B.S.S.'s lack of empathy, particularly because she herself was a sexual abuse victim.

¶19   The circuit court, finding that "the needs of the community would be [met by] requiring the juvenile to be adjudicated for a sex offender offense as she has been, [and] that she [be] placed on an order with conditions," adopted the conditions for disposition set forth in the court report.  Next, it turned to B.S.S.'s request to stay sex offender registration.  In analyzing that request, the court addressed each of the WIS. STAT. § 938.34(15m)(c) factors that our supreme court concluded should be considered in deciding a § 938.34(16) motion to stay sex

12

offender registration. *See* **State v. Cesar G.**, 2004 WI 61, ¶50, 272 Wis. 2d 22, 682 N.W.2d 1. First, it saw the offenses as very serious. Second, it saw the significant age gap (six-to-seven years), the victim's young age (four-to-five years old) when the assaults began, the lengthy period of time over which the assaults occurred (four years), and the continuation of the assaults on the victim when he was eight—despite fifteen-year-old B.S.S. having a boyfriend—as weighing in favor of ordering registration. The court explained that the age difference that allowed B.S.S. to befriend this young child, gain his trust, groom him by first exposing him to pornography and then engaging in sexual intercourse for her sexual gratification, "warrant[ed] a finding of not granting the stay."

¶20    Third, the circuit court found that bodily harm did not occur, so this factor weighed in favor of granting the stay. Fourth, the court saw the mental deficiency factor as neutral because it was unsure whether the victim's young age could be considered a mental deficiency. Fifth, in addressing the probability the juvenile would re-offend, the court observed that the psychosexual evaluation acknowledged there is no "actuarial instrument to predict recidivism" for juvenile sex offenders. Based on that, it concluded this factor would not weigh in favor of or against the requested stay.

¶21    Sixth, the circuit court addressed the "any other factor" catchall consideration. Here, it considered "the length of time [the assaults] went on, the planning that went on, the grooming that went on, and the lack of empathy[.]" It saw these factors as favoring denial of the stay. Finally, the court discussed the protection of the public, concluding that putting B.S.S. on the "registry will have some type of effect on protecting the public." It found the burden for imposing the stay rested with B.S.S., and in looking at the factors, it found B.S.S. failed to meet

the burden. The court entered the Dispositional Order on August 22, 2019, and it required B.S.S. to register as a juvenile sex offender.

¶22 In January 2021, B.S.S. filed a postdisposition motion seeking to modify the Dispositional Order and asking the circuit court to conduct another hearing on her motion to stay sex offender registration. Her grounds for the motion rested in a postdisposition psychosexual evaluation conducted by Dr. Dawn M. Pflugradt, who concluded that B.S.S. was a low risk to re-offend. In May 2021, the circuit court held a hearing to take Dr. Pflugradt's testimony. Dr. Pflugradt testified that she met with B.S.S. for eighty minutes and found her to be at low risk to commit another sexual offense because she is similar to most female sex offenders, who have a base rate of re-offending of "about 1.5 percent over three years and about seven percent over 18 years." Dr. Pflugradt admitted that much of B.S.S.'s information came from self-reporting and that she did not view the age difference or the relationship as risk factors. In Dr. Pflugradt's experience, very few female sex offenders re-offend after getting caught. She confirmed that her report acknowledged there is no instrument in use for analyzing recidivism rates in females.

¶23 In November 2021, the circuit court rendered an oral decision denying B.S.S.'s motion. It noted it had reviewed the transcript from the August 21, 2019 dispositional hearing and its conclusion that B.S.S. "failed to prove by clear and convincing evidence that a stay from the sex offender registry was appropriate." It adopted its previous analysis from the August 21st decision and explained that, based on the statute and *Cesar G.*, the risk of re-offending factor is simply one of the factors a court considers—a court is not obligated to find it is the most weighty factor or that it outweighs all the other factors. It explained that Dr. Pflugradt's testimony regarding the absence of any instrument

to measure female recidivism was consistent with the information the court had when it made its decision in August 2019. It noted that Dr. Pflugradt based her opinion on B.S.S.'s self-reporting and found Dr. Pflugradt's opinion about B.S.S.'s "low risk to re-offend" not as credible because of her reliance on self-reporting. The court was also troubled by Dr. Pflugradt's opinion that the significant age difference was "not pertinent in determining whether [B.S.S.] should be subject to the [sex offender] registry." Finally, the court decided that even if it accepted Dr. Pflugradt's opinion that B.S.S. was a low risk to re-offend, "this evidence would not overcome the other factors this Court examined under *Cesar G.* that support the conclusion that she should be subject to the sex offender registry[,]" and it therefore denied B.S.S.'s motion to modify the Dispositional Order. The circuit court entered a written order denying the motion.

¶24 B.S.S. filed a motion requesting the circuit court to reconsider its decision and provided an additional "affidavit"[7] from Dr. Pflugradt. The court denied the reconsideration motion. B.S.S. now appeals.

## II. DISCUSSION

¶25 B.S.S. makes two arguments on appeal: (1) the circuit court should have recused itself based on actual bias; and (2) the circuit court erroneously exercised its discretion by denying her stay request without connecting her re-offending risk to a need to protect the public. This court rejects both contentions.

---

[7] This document is titled "affidavit," but appears to be a supplemental letter report.

### A.    Actual Bias

¶26    B.S.S. contends the circuit court evidenced a great risk of actual bias during its hearing on her motion requesting funding to obtain a psychosexual evaluation before disposition.  She says the court's comments about requiring her to register as a sex offender even if an evaluator concluded she was a low risk constituted prejudgment.  She also asserts the court treated her unfairly when it: (1) found the re-offense risk factor to be neutral at the dispositional hearing because it lacked sufficient information to assess risk; (2) rejected Dr. Pflugradt's report because Dr. Pflugradt had not read the police reports and relied on self-reporting; and (3) relied on all the statutory factors except for re-offense risk.

¶27    "The right to an impartial judge is fundamental to our notion of due process." *State v. Goodson*, 2009 WI App 107, ¶8, 320 Wis. 2d 166, 771 N.W.2d 385.  In reviewing bias claims, this court presumes "that a judge has acted fairly, impartially, and without prejudice."  *State v. Herrmann*, 2015 WI 84, ¶24, 364 Wis. 2d 336, 867 N.W.2d 772.  "To overcome that presumption, the burden is on the party asserting judicial bias to show bias by a preponderance of the evidence." *Miller v. Carroll*, 2020 WI 56, ¶16, 392 Wis. 2d 49, 944 N.W.2d 542.  "If a party rebuts this presumption and shows a due process violation, the error is structural and not subject to a harmless error analysis." *Id.*  This court's review is de novo. *Goodson*, 320 Wis. 2d 166, ¶7.

¶28    Here, B.S.S. alleges the circuit court was objectively biased. "Objective bias can exist in two situations:  (1) where there is an appearance of bias; and (2) where objective facts demonstrate that a judge treated a party unfairly." *State v. Marcotte*, 2020 WI App 28, ¶17, 392 Wis. 2d 183, 943 N.W.2d 911.  The appearance of bias is sufficient when it "reveals a great risk of actual

bias." ***Herrmann***, 364 Wis. 2d 336, ¶67. "[C]omments indicating a circuit court has prejudged a defendant's sentence can give rise to objective bias." ***Marcotte***, 392 Wis. 2d 183, ¶20. The test is whether a reasonable person would conclude prejudgment from the comments, "not what a reasonable trial judge, a reasonable appellate judge, or even a reasonable legal practitioner would conclude." ***State v. Gudgeon***, 2006 WI App 143, ¶26, 295 Wis. 2d 189, 720 N.W.2d 114.

¶29    B.S.S. failed to show actual bias or a great risk of actual bias. First, despite B.S.S.'s claim, the circuit court's comments during the hearing on her motion for funding, which ultimately related to the stay factors the court would have to address if and when B.S.S. filed a motion to stay the juvenile sex-offender-registration requirement,[8] do not demonstrate prejudgment or a risk of bias as to disposition or as to a yet-to-be-filed motion to stay juvenile sex offender registration. This is so because the comments B.S.S. complains about arose in the context of the circuit court explaining why it was denying B.S.S.'s request for funding after B.S.S.'s lawyer repeatedly argued the psychosexual evaluation was needed in order to support a future motion to stay sex offender registration because an evaluation would specifically address B.S.S.'s likelihood of re-offending (one of the stay factors). Thus, in this context, the court's analysis as to whether it would grant the funding request was necessarily intertwined with its ultimate analysis of the factors it would be required to consider in addressing a future motion to stay.

---

[8] The comments at issue occurred at a June 14, 2019 hearing, and disposition did not occur until August 21, 2019. Additionally, B.S.S. had not yet filed a motion to stay. The text of WIS. STAT. § 938.34(16) itself refers to the circuit court imposing a stay "*[a]fter* ordering a disposition[.]" (Emphasis added.)

¶30    In explaining its rationale, which was premised on an assumption that the evaluation B.S.S. sought would be favorable to her and indicate a low likelihood of re-offending, the circuit court aptly provided its reasons for denying funding for the psychosexual evaluation. Thus, in this context—which was necessitated by B.S.S.'s own argument as to why funding for the evaluation was necessary—the circuit court's analysis of the stay factors did not constitute prejudgment or actual bias. Rather, the court's analysis, which was based on both its assumption that B.S.S. would not re-offend and its consideration of the other pertinent factors, led it to conclude that because it would not grant a stay as to the sex-offender-registration requirement, it was unnecessary to grant the funding request. Accordingly, the circuit court's comments related to the stay factors were appropriate here because they related directly to its reason for denying B.S.S.'s funding request. Under these circumstances, a reasonable person who reviewed the Record in this case would not conclude that the circuit court acted with bias.[9]

¶31    B.S.S. also claims the circuit court treated her unfairly after denying her request for a psychosexual evaluation because, at the dispositional hearing, it said the re-offense risk factor was neutral because it did not have sufficient information to determine B.S.S.'s risk. B.S.S. contends that if the circuit court

---

[9] B.S.S. relies on multiple cases, including *State v. Marcotte*, 2020 WI App 28, 392 Wis. 2d 183, 943 N.W.2d 911; *State v. Goodson*, 2009 WI App 107, 320 Wis. 2d 166, 771 N.W.2d 385; and *State v. Gudgeon*, 2006 WI App 143, 295 Wis. 2d 189, 720 N.W.2d 114, but those cases are distinguishable and do not control. Here, unlike in those cases, the circuit court largely had the information relevant to disposition and a motion to stay before it when it analyzed the stay factors, all of which were part of the Record, in addressing B.S.S.'s funding request. To the extent that it did not have information from a psychosexual evaluation, *it assumed the evaluation would be favorable to B.S.S. for the purpose of its analysis*. Moreover, the court's comments arose in the context of B.S.S's funding argument, which was indisputably intertwined with the factors a court must consider when addressing a motion to stay juvenile sex offender registration.

would have granted her motion to obtain an evaluation before the dispositional hearing, the court would have had Dr. Pflugradt's report with her opinion on the probability B.S.S. would re-offend.

¶32    This court rejects B.S.S.'s contention.  The circuit court's statements regarding risk assessment at the dispositional hearing related to the undisputed fact that no actuarial instrument exists to assess recidivism in female juvenile offenders.  This information came from Lepak-Jostsons' report as well as an article B.S.S. submitted that said the same thing as to juveniles more generally.  Dr. Pflugradt's report likewise agreed there is no instrument to evaluate a female juvenile's risk of re-offending.  The court's comments that B.S.S. complains about do not show unfairness; rather, they show the court acknowledged an undisputed fact.  Further, Lepak-Jostsons' report opined that B.S.S. was a high risk to re-offend.  The circuit court ignored that opinion because of the lack of an actuarial instrument.

¶33    Likewise, this court rejects B.S.S.'s claim that the circuit court treated her unfairly in its assessment of Dr. Pflugradt's opinion.  Dr. Pflugradt testified that she relied on B.S.S.'s self-reports in forming her opinions and told the circuit court she did not read the police reports.  Thus, it was entirely reasonable for the court to consider those facts in deciding whether Dr. Pflugradt's opinion should change the court's previous decision about denying B.S.S.'s stay motion.  "[T]he trier of fact is the sole arbiter of the credibility of witnesses and alone is charged with the duty of weighing the evidence."  *State v. Below*, 2011 WI App 64, ¶4, 333 Wis. 2d 690, 799 N.W.2d 95.  This court will not substitute its judgment for the circuit court's unless the evidence it relied on was "inherently or patently incredible—that kind of evidence [that] conflicts with the laws of nature

or with fully-established or conceded facts." ***State v. Tarantino***, 157 Wis. 2d 199, 218, 458 N.W.2d 582 (Ct. App. 1990).

¶34    B.S.S. believes the circuit court acted unfairly because it did not see Dr. Pflugradt's opinions as a reason to exclude B.S.S. from the sex offender registry.  But, there is nothing in the Record to suggest the court's credibility determinations were wrong.  Rather, what the Record reflects is that the court believed both Lepak-Jostsons' and Dr. Pflugradt's representations that there is no instrument upon which a juvenile female's recidivism risk may be assessed.  As a result, the circuit court did not accept either evaluator's opinion about B.S.S.'s risk of re-offending.  Lepak-Jostsons opined that B.S.S.'s risk was high, and Dr. Pflugradt opined that B.S.S.'s risk was low.  Instead of accepting one over the other, the circuit court disregarded both because everyone agreed there is no reliable instrument to determine B.S.S.'s risk.  Even still, the circuit court said that, even if it were to accept that B.S.S. was low risk, given all the other relevant factors it was required to consider, B.S.S. failed to establish by clear and convincing evidence that her required sex offender registration should be stayed.

¶35    B.S.S.'s final unfairness contention is that the circuit court ignored the risk of re-offense factor at the dispositional hearing, but then at the postdisposition hearing said it could not ignore the other pertinent factors.  This court disagrees with B.S.S.'s characterization.  The circuit court did not ignore any of the factors it was required to consider—to the contrary, it carefully analyzed each of them.  The fact that the circuit court found the risk of re-offense factor to be neutral because there is no actuarial assessment to reliably determine risk does not support B.S.S.'s contention.

### B. *Erroneous Exercise of Discretion*

¶36 B.S.S. also contends the circuit court erroneously exercised its discretion when it refused to excuse her from the sex-offender-registration requirement without "connecting her risk of reoffending sexually to a need to protect the public." She believes that a circuit court cannot deny a motion to stay sex offender registration unless the court finds the juvenile has an elevated risk of re-offending because, absent an elevated risk, having B.S.S. on the registry does not protect the public. This court disagrees.

¶37 A circuit court's discretionary decision is reviewed under the erroneous exercise of discretion standard. *Cesar G.*, 272 Wis. 2d 22, ¶42. "An appellate court will affirm a circuit court's discretionary decision as long as the circuit court 'examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach.'" *Id.* (citation omitted).

¶38 Although B.S.S.'s argument may be logical in a practical sense, our supreme court in *Cesar G.* plainly held that "when deciding whether to stay its sex offender registration order under [WIS. STAT.] § 938.34(16)[,]" "the circuit court should consider the seriousness of the offense, as well as the factors listed in WIS.

STAT. § 938.34(15m)(c) and repeated in [WIS. STAT.] § 301.45(1m)(e)[.]"[10]

***Cesar G.***, 272 Wis. 2d 22, ¶¶47, 49. This is exactly what the circuit court did.

¶39    WISCONSIN STAT. § 938.34(15m)(c) provides:

> In determining under par. (am)1. whether it would be in the interest of public protection to have the juvenile report under s. 301.45, the court may consider any of the following:
>
> 1. The ages, at the time of the violation, of the juvenile and the victim of the violation.
>
> 2. The relationship between the juvenile and the victim of the violation.
>
> 3. Whether the violation resulted in bodily harm, as defined in s. 939.22 (4), to the victim.
>
> 4. Whether the victim suffered from a mental illness or mental deficiency that rendered him or her temporarily or permanently incapable of understanding or evaluating the consequences of his or her actions.
>
> 5. The probability that the juvenile will commit other violations in the future.
>
> 7.[11] Any other factor that the court determines may be relevant to the particular case.

---

[10] WISCONSIN STAT. § 938.34(15m)(c) and WIS. STAT. § 301.45(1m)(e) contain essentially the same factors except that § 301.45(1m)(e) lists one additional factor not applicable here. Section 938.34(15m)(c) relates to violations under § 938.34(15m)(am) where the statutory text does not mandate sex offender reporting, but leaves registration to the discretion of the circuit court. Our supreme court, in deciding ***State v. Cesar G.***, 2004 WI 61, 272 Wis. 2d 22, 682 N.W.2d 1, concluded that circuit courts should also use the § 938.34(15m)(c) factors in mandatory reporting § 938.34(15m)(bm) cases where the juvenile filed a motion to stay the registration requirements. Section 301.45(1m)(e) covers cases involving § 301.45(1m) exceptions.

[11] The numbering in this statute skips number six.

¶40    In making both the original decision to deny B.S.S.'s motion to stay sex offender registration and its postdisposition decision, the circuit court addressed each of the factors from the statutory list. The circuit court started with the seriousness of the offense, noting how very serious B.S.S.'s offenses were. It considered the significant age difference and the relationship to be aggravating factors weighing against a stay. It noted the absence of bodily harm weighed in favor of a stay, and the mental deficiency factor was not a part of this case. With respect to the probability of re-offending, the circuit court relied on the representations that there is no actuarial test to assess recidivism for female juvenile offenders. Finally, it looked at other factors it decided were relevant and concluded they weighed in favor of retaining the mandatory reporting requirement. It determined that keeping B.S.S. on the sex offender registry would provide some protection of the public.

¶41    Although B.S.S. certainly would have preferred a circuit court that placed more weight on Dr. Pflugradt's opinion than on any other factor, the circuit court's decision not to do so is not an erroneous exercise of discretion. First, if the legislature wanted circuit courts to make these decisions based solely on an expert's opinion on risk of re-offending, it could have said so. It did not. It listed a variety of factors, and our supreme court in *Cesar G.* agreed that a circuit court should consider the seriousness of the offense and the statutorily enumerated factors in deciding a stay motion. *Cesar G.*, 272 Wis. 2d 22, ¶50. Second, the circuit court looked at the pertinent facts, applied the correct law by considering all of the statutory factors, and reached a reasonable determination in denying B.S.S.'s request to avoid sex offender registration. In making these types of discretionary decisions, circuit courts are free to give more weight to some factors and less weight to others. *See, e.g.*, *LeMere v. LeMere*, 2003 WI 67, ¶25, 262

23

Wis. 2d 426, 663 N.W.2d 789 (recognizing that when statute lists factors to consider, circuit court may give "greater weight" to some and conclude that "some factors may not be applicable at all"); *Ocanas v. State*, 70 Wis. 2d 179, 185, 233 N.W.2d 457 (1975) ("The weight which is to be attributed to each factor is a determination which appears to be particularly within the wide discretion of the sentencing judge.").

¶42 The circuit court's focus on the seriousness of B.S.S.'s violations, the significant age difference, the very young age of the victim when the assaults began, the lengthy duration of the ongoing assaults, and the other factors, particularly since B.S.S. pled to a crime the legislature determined warranted *mandatory* reporting, constituted a proper exercise of discretion. This is not a situation where a circuit court gave too much weight to one factor and ignored other relevant factors, which could be an erroneous exercise of discretion. *See, e.g.*, *Harris v. State*, 75 Wis. 2d 513, 518, 250 N.W.2d 7 (1977) (recognizing "'too much weight given to one factor in the face of other contravening considerations'" may constitute an erroneous exercise of discretion (citation omitted)). The circuit court here explained why it did not credit Dr. Pflugradt's opinion on re-offense risk and why it thought the other factors controlled. The circuit court's decision was reasonable. Circuit courts are not required to accept every expert opinion presented. *State v. Kienitz*, 221 Wis. 2d 275, 303, 585 N.W.2d 609 (Ct. App. 1998), *aff'd*, 227 Wis. 2d 423, 597 N.W.2d 712 (1999) ("The fact-finder may accept certain portions of an expert's testimony while rejecting other portions."). Here, both expert reports agreed there is no actuarial instrument to determine female juvenile recidivism risk. Moreover, Dr. Pflugradt testified that she assigns a low risk of re-offending to any woman offender who "look[s] like a typical female sex offender." Given the difficulty in determining a female juvenile

offender's recidivism risk, it was not an erroneous exercise of discretion for the circuit court to rely on the other pertinent factors and to conclude that B.S.S. failed to meet her burden of proving by clear and convincing evidence that she should be excused from the mandatory juvenile sex-offender-registration requirement.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.