COURT OF APPEALS
DECISION
DATED AND FILED

March 9, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing.  If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.  *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal Nos.    **2021AP1925-CR**
               **2021AP1926-CR**
STATE OF WISCONSIN

Cir. Ct. Nos.  2020CF377
                        2021CF79

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

EDWARD W. HATFIELD,

   DEFENDANT-APPELLANT.

        APPEALS from judgments and orders of the circuit court for Sauk County:  MICHAEL P. SCRENOCK, Judge.  *Affirmed.*

        Before Blanchard, P.J., Kloppenburg, and Fitzpatrick, JJ.

        **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Edward W. Hatfield pleaded no contest to two drug-related offenses in May 2021. Following the sentencing hearing, Hatfield filed a motion for resentencing. In the motion, Hatfield argued that the circuit court judge, the Honorable Michael P. Screnock, was objectively biased against him because Judge Screnock had presided over Sauk County's drug treatment court when Hatfield participated in the treatment court in 2016 and 2017, following Hatfield's conviction in an earlier case.[1] Hatfield argued, in the alternative, that the circuit court erroneously exercised its discretion by denying his eligibility for the Challenge Incarceration Program and the Substance Abuse Program.[2] The circuit court held a hearing and denied the motion. Hatfield renews his arguments on appeal. We affirm.

## BACKGROUND

¶2     Hatfield participated in the Sauk County Drug Treatment Court from January 2016 until he graduated in September 2017, following his conviction in 2015 of two counts of burglary. Judge Screnock presided over the treatment court at that time. Hatfield's probation in the burglary case was subsequently revoked,

---

[1] The Honorable Michael P. Screnock presided over all proceedings pertinent to this appeal. We refer to Judge Screnock by name when discussing the facts and the law regarding Hatfield's objective bias claim, and as "the circuit court" otherwise.

[2] The Challenge Incarceration Program and the Substance Abuse Program are prison treatment programs. The Challenge Incarceration Program includes "manual labor, personal development counseling, substance abuse treatment and education, military drill and ceremony, counseling, and strenuous physical exercise[.]" WIS. STAT. § 302.045 (2021-22). The Substance Abuse Program provides substance abuse treatment. WIS. STAT. § 302.05. Upon completion of either program, an inmate's remaining initial confinement time is normally converted to extended supervision. Secs. 302.045(3m)(b)1., 302.05(3)(c)2.a.

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

and Judge Screnock recused himself from the sentencing after revocation that followed.

¶3      In August 2020, the State charged Hatfield with possession of methamphetamine, child neglect, and possession of drug paraphernalia in Sauk County case number 2020CF377 ("the 2020 case"). In February 2021, the State charged Hatfield with possession with intent to deliver methamphetamine and maintaining a drug trafficking place, both as a party to a crime, and with felony bail jumping in Sauk County case number 2021CF79 ("the 2021 case").

¶4      Pursuant to a global plea agreement, Hatfield pleaded no contest to possession of methamphetamine in the 2020 case and possession of amphetamine with intent to deliver in the 2021 case, with the remaining counts being dismissed and read in at sentencing. Pursuant to the agreement, the parties made a joint sentencing recommendation of one year of initial confinement and one year of extended supervision on the 2020 possession count, and two years of initial confinement and two years of extended supervision on the 2021 possession with intent to deliver count. The recommendation provided for the sentences to be concurrent with each other but consecutive to any other sentence.

¶5      At the sentencing hearing in May 2021, the circuit court, Judge Screnock presiding, addressed the nature and gravity of the offenses, deterrence, the need to protect the public, and Hatfield's rehabilitative needs. The court imposed the sentence recommended by the parties and found Hatfield ineligible for the Challenge Incarceration Program and the Substance Abuse Program.

¶6      Hatfield subsequently filed a motion for resentencing in both cases pursuant to WIS. STAT. § 974.02. Hatfield argued that Judge Screnock was objectively biased because Judge Screnock had allegedly been exposed to ex parte

3

information about Hatfield's drug abuse when he presided over the Sauk County treatment court when Hatfield participated in that court. Hatfield argued, in the alternative, that the circuit court erroneously exercised its discretion by denying his eligibility for the Challenge Incarceration Program and the Substance Abuse Program.

¶7 The circuit court denied the motion at a non-evidentiary hearing in October 2021.

¶8 Hatfield appeals.

## DISCUSSION

### I. Claim of Judicial Bias

¶9 Hatfield renews his argument that Judge Screnock was objectively biased because Judge Screnock presided over the treatment court when Hatfield participated in that court. We reject this argument as unsupported by both the record and the legal authority on which Hatfield relies.

¶10 "The right to an impartial judge is fundamental to our notion of due process." *State v. Goodson*, 2009 WI App 107, ¶8, 320 Wis. 2d 166, 771 N.W.2d 385. When analyzing a claim of judicial bias, we "presume that the judge was fair, impartial, and capable of ignoring any biasing influences." *State v. Gudgeon*, 2006 WI App 143, ¶20, 295 Wis. 2d 189, 720 N.W.2d 114; *State v. Herrmann*, 2015 WI 84, ¶24, 364 Wis. 2d 336, 867 N.W.2d 772. To overcome that presumption, the burden is on the party asserting judicial bias to show bias by a preponderance of the evidence. *Id.* "[I]t is the exceptional case with 'extreme facts' which rises to the level of a 'serious risk of actual bias.'" *Miller v. Carroll*, 2020 WI 56, ¶24, 392 Wis. 2d 49, 944 N.W.2d 542 (quoted sources omitted).

4

¶11   Hatfield asserts that Judge Screnock was objectively biased.[3] Objective bias can exist in two situations:  (1) where there is an appearance of bias; or (2) where objective facts demonstrate that a judge treated a party unfairly. *Goodson*, 320 Wis. 2d 166, ¶9.  Hatfield contends that Judge Screnock sentencing him after Judge Screnock presided over the treatment court when Hatfield participated in that court gave rise to the appearance of partiality.  "When the appearance of bias reveals a great risk of actual bias, the presumption of impartiality is rebutted, and a due process violation occurs."  *Hermann*, 364 Wis. 2d 336, ¶46.

¶12   Whether the circuit court was objectively biased presents a question of law that we review de novo. *Herrmann*, 364 Wis. 2d 336, ¶23.

¶13   This court addressed in *State v. Marcotte*, 2020 WI App 28, 392 Wis. 2d 183, 943 N.W.2d 911, the issue of objective bias in the context of a defendant being sentenced by the judge who presided over a treatment court in which the defendant participated.  In that case, this court concluded that the defendant showed objective bias when the sentencing judge presided over a treatment court program that the defendant failed to complete, and when that judge at the sentencing hearing made comments indicating that he had prejudged the defendant's sentence. *Id.*, ¶1.  Specifically, the judge in that case made comments during treatment court proceedings indicating that the defendant would receive a particular sentence if the defendant were terminated from treatment court. *Id.*,

---

[3] A judge may also be subjectively biased. *Miller v. Carroll*, 2020 WI 56, ¶21, 392 Wis. 2d 49, 944 N.W.2d 542.  Subjective bias is present when a judge determines that the judge cannot be impartial. *Id.*  Hatfield does not assert that Judge Screnock was subjectively biased; consequently, we do not address that issue.

¶¶7, 31. The same judge presided at the defendant's sentencing after revocation, following the defendant's termination from the treatment court. *Id.*, ¶¶8-13. In his sentencing remarks, the judge emphasized his significant familiarity with the defendant and the defendant's circumstances based on the defendant's participation in treatment court. *Id.*, ¶¶10-13. The judge imposed a sentence that exceeded the sentences recommended by the State and by the Department of Corrections revocation summary. *Id.*, ¶¶ 8-10. The same judge denied the defendant's postconviction motion for resentencing, and we reversed and remanded for resentencing before a different judge. *Id.* ¶¶1, 15.

¶14    We observed that a treatment court judge "receives significant amounts of ex parte information about [treatment] court participants that no other judge would have access to when sentencing those individuals." *Id.*, ¶32. We explained that, in addition to proceedings held on the record, the treatment court team holds regular meetings in which the team advises the presiding judge of each participant's progress or violation. *Id.* The treatment court judge also controls the treatment court files, which are confidential and separate from the circuit court files. *Id.* In addition, the defendant has no opportunity to correct, explain, or otherwise respond to the information received by the judge during the team meetings. *Id.*, ¶34. We concluded that the record in *Marcotte* contained evidence of objective bias beyond the mere fact that the judge had presided over both the treatment court and the defendant's sentencing after revocation, notably the judge's statements in both proceedings supporting the inference that the judge had prejudged the defendant's sentence. *Id.*, ¶¶40-41. We concluded that all of these factors taken together revealed "a great risk of actual bias." *Id.*, ¶41.

¶15    We clarified that we were not ruling "that a judge who has presided over [treatment] court proceedings involving a particular defendant can never

6

sentence that defendant after the revocation of [the defendant's] probation." *Id.*, ¶40. At the same time, we cautioned "that presiding over both a defendant's [treatment] court proceedings and [the defendant's] sentencing after revocation raises significant concerns regarding partiality. Consequently, the better practice would be for different judges to preside over a defendant's [treatment] court proceedings and [the defendant's] sentencing after revocation." *Id.*, ¶42.

¶16 At the hearing on Hatfield's motion, Judge Screnock distinguished *Marcotte* from this case. Judge Screnock said that in *Marcotte* the judge presided over sentencing after revocation in the same case in which the defendant had been placed in treatment court. Here, Judge Screnock said, the sentencing was in new cases involving conduct committed years after Hatfield's involvement in the treatment court. Judge Screnock explained that the Sauk County judges, when establishing the treatment court, concluded as a matter of policy that the presiding judge in treatment court "would not sentence a participant in the case for which they were participating in treatment court if their participation in treatment court was terminated, their probation was then revoked, and there then was a sentencing hearing after revocation." Judge Screnock said that, after the judges adopted this policy, he had not participated in sentencing after revocation hearings when he had been the treatment court judge in the same case.

¶17 Judge Screnock determined that this case is different from *Marcotte*, in that the charges in the new cases at issue were brought before him between three and three and one-half years after Hatfield had graduated from treatment court in a different case involving different charges. Judge Screnock said that he had commonly experienced similar scenarios in which a former treatment court participant came back before him on new charges. Judge Screnock said that he independently determines, both in those cases and in this case, whether he believes

7

he could be fair and impartial and whether, even when he believes that he could be fair and impartial, the appearance of bias is so great as to warrant recusal. Judge Screnock followed that practice in this case and determined that recusal was not warranted.

¶18 More specifically, Judge Screnock determined that "there is not a single fact that I was privy to through ex parte communications while Mr. Hatfield was in treatment court that bore in any way on the sentencing decision" in this case. Judge Screnock could not recall any facts about Hatfield or his situation that would not have also been discussed in open court in treatment court. Judge Screnock determined that "there is no aspect of any of the information that was shared during treatment court staff meetings outside of Mr. Hatfield's presence during the January 2016 to September 2017 time period that influenced the sentencing decision" in this case.

¶19 Judge Screnock denied the motion as it related to judicial bias.

¶20 Hatfield argues that this case is governed by *Marcotte*. In his oral argument to the circuit court on this issue, Hatfield acknowledged that the facts that showed bias in *Marcotte*, involving the judge's remarks giving rise to the inference that the judge had predetermined the defendant's sentence if the defendant did not successfully complete the treatment court, do not exist here. Rather, Hatfield focused, as he does on appeal, on the part of *Marcotte* that discussed the sentencing judge's exposure to ex parte information during treatment court proceedings, and argued that Judge Screnock's exposure to ex parte information about Hatfield shows the judge's objective bias here. We reject this argument based on our interpretation of *Marcotte* and the record in this case.

8

¶21    As Judge Screnock explained, *Marcotte* is readily distinguishable. The ruling in that case is limited to the situation in which the circuit court judge presides over treatment court in which a defendant participates, the defendant is subsequently terminated from treatment court, and the same judge presides over the hearing on a sentence after revocation for that defendant, all in the same case. *Id.*, ¶¶41-42.    Here, Judge Screnock presided over treatment court from which Hatfield graduated in a prior case three or more years before the conduct underlying the new, different cases in which Judge Screnock imposed the sentences that Hatfield challenges.    In addition, here there was not what amounted to a prediction in the treatment court about what sentence would be imposed if the defendant were to return to court for sentencing.    Hatfield essentially seeks an extension of *Marcotte*, asserting that Judge Screnock's "serial participation … in drug treatment court followed three years later with sentencing in two drug offense cases" created "at the very least … an appearance of impropriety."    Hatfield does not persuade us that *Marcotte* should be extended beyond its facts and ruling to the facts in this case.[4]

¶22    Hatfield also argues that Hatfield had no opportunity to explain or contradict the ex parte information that Judge Screnock received about Hatfield. But Hatfield has not identified the information or presented any evidence as to what Judge Screnock would have learned and how it affected, to Hatfield's

---

[4] We also observe that, unlike in *State v. Marcotte*, 2020 WI App 28, ¶¶8-10, 392 Wis. 2d 183, 943 N.W.2d 911, in which the judge imposed a sentence higher than that recommended by the State and the Department of Corrections, Judge Screnock imposed the sentence jointly recommended by the parties. This distinction also militates against extending the ruling in *Marcotte* to this case. *See State v. Magnuson*, 220 Wis. 2d 468, 471-72, 583 N.W.2d 843 (Ct. App. 1998) (a defendant is judicially estopped from asserting that a sentence jointly recommended by the parties pursuant to a plea agreement is excessive).

detriment, Judge Screnock's consideration of the sentencing factors on which Judge Screnock focused. Rather, Hatfield ultimately rests his argument on the alleged appearance of bias based on the fact that Judge Screnock presided over the treatment court when Hatfield participated in that court, and we have rejected that argument above.

## II. Claim Regarding Eligibility for Prison Programs

¶23 Hatfield argues that the circuit court erroneously exercised its discretion by denying his eligibility for the Challenge Incarceration Program and the Substance Abuse Program. We reject this argument as refuted by the record.

¶24 As stated, the Challenge Incarceration Program and the Substance Abuse Program are prison treatment programs. If the circuit court finds a defendant eligible for either or both programs, the Department of Corrections may permit the defendant to participate. *See* WIS. STAT. §§302.045(2)(cm), 302.05(3)(a)2. When an inmate successfully completes either program, the inmate's remaining initial confinement time will normally be converted to extended supervision time. *See* WIS. STAT. §§ 302.045(1), 302.045(3m)(b), 302.05(1)(am), 302.05(3)(c)2.[5]

¶25 A circuit court exercises its sentencing discretion when determining a defendant's eligibility for these programs. *See* WIS. STAT. § 973.01(3g)-(3m) (referencing the court's "exercise of its sentencing discretion" in imposing

---

[5] *But see* **State v. Gramza**, 2020 WI App 81, ¶3, 395 Wis. 2d 215, 952 N.W.2d 836 (stating that an inmate who completed the Substance Abuse Program before serving the statutorily mandatory minimum term of initial confinement must serve that term before the inmate may be released).

10

sentence); *State v. Lehman*, 2004 WI App 59, ¶19, 270 Wis. 2d 695, 677 N.W.2d 644 (ruling that § 973.01(3m) authorizes the sentencing court, in the exercise of its discretion, to determine a defendant's eligibility for prison treatment programs). We will sustain the circuit court's discretionary decisions as to eligibility for the prison treatment programs if those decisions are supported by the record and the overall sentencing rationale. *See State v. Owens*, 2006 WI App 75, ¶¶7-9, 291 Wis. 2d 229, 713 N.W.2d 187; *see also State v. Steele*, 2001 WI App 160, ¶¶7-8, 246 Wis. 2d 744, 632 N.W.2d 112.

¶26    At the sentencing hearing here, the circuit court first considered deterrence and the need to protect the public, and the gravity of the offenses. *See State v. Gallion*, 2004 WI 42, ¶¶40, 43-44, 270 Wis. 2d 535, 678 N.W.2d 197 (the primary objectives that a sentence may address are "the protection of the community, punishment of the defendant, rehabilitation of the defendant, and deterrence to others"; a sentence must "call for the minimum amount of custody or confinement which is consistent with the protection of the public, the gravity of the offense and the rehabilitative needs of the defendant" (quoted source omitted)). The court said that one of the offenses, possession of methamphetamine, may be treated "with some leniency when we're dealing with folks who have addictions that they're just struggling to break out of." However, the court said that "[t]hat is not the case" with the other offense, possession with intent to deliver, because "[t]hat is a crime that impacts the community in a big way." The court explained, "It allows other addicted folks to continue to fuel their habit and their addiction rather than seeking out help." The court also referenced its concern about the nature of the drug dealing at issue. The court, noting that the facts "suggested at least a level of sophistication and recurrence," asked the State about the street

11

value of the drugs involved. The State responded that it did not have an exact number but that "[i]t's several thousand dollars."

¶27 The circuit court then considered Hatfield's rehabilitative needs. *See Gallion*, 270 Wis. 2d 535, ¶¶40, 43-44. The court referenced Hatfield's prior completion of both the Sauk County Drug Treatment Court and the Department of Corrections Challenge Incarceration Program, noting that "Mr. Hatfield has been provided every opportunity that can be accomplished within the community and in a confined setting." The court observed that, after Hatfield secured early release from his earlier sentence by completing the Challenge Incarceration Program, "not only did Mr. Hatfield return to using" but he also "turned to selling drugs," which was "just not acceptable."

¶28 The circuit court determined that, based on the need to protect the public and the gravity of the offenses, as well as Hatfield's returning to drug abuse and turning to drug dealing "on the heels of his []confinement in the earlier case," it would follow the joint recommendation. The court noted that a long period of extended supervision was particularly warranted on the possession with intent to deliver count, and that that goal would be achieved through the imposition of the extended supervision in that sentence combined with the "longer period of extended supervision" imposed in a sentence that Hatfield was serving related to an earlier case.

¶29 The circuit court also ruled Hatfield ineligible for the Challenge Incarceration Program and the Substance Abuse Program. The court explained, "He'll need to serve out his time in these two cases and then pursue further treatment within the community under the supervision of his agent."

12

¶30 At the postconviction motion hearing, the circuit court said that it had made its decision regarding Hatfield's eligibility for the treatment programs based on the same reasoning that underlay the sentence itself. The court explained that its primary objectives in both respects—imposing the sentence and denying eligibility—were punishment and deterrence. The court said it was evident from the court's sentencing remarks that the court reasoned that allowing for participation in the programs under the circumstances it detailed would detract from those two sentencing objectives. Accordingly, the court concluded that it had properly exercised its discretion at sentencing and denied Hatfield's postconviction motion as it related to his programming eligibility.

¶31 We conclude that the circuit court's decision to deny Hatfield's eligibility for the treatment programs is amply supported by the record and the court's sentencing rationale. The court made the eligibility denial decision in order to further its primary sentencing goals of punishment and deterrence, in light of Hatfield's history of continued drug abuse despite treatment in and out of prison and his most recent turn to drug dealing, which had more serious adverse effects on the community. The court made the decision, together with the sentence it imposed, to ensure that Hatfield spends sufficient time in prison to satisfy the court's sentencing goals.

¶32 Hatfield argues that the circuit court "did not engage in a thorough process of reasoning in" making the eligibility denial decision in two respects: (1) the court did not explain its consideration of the alternative of imposing, as part of these sentences, a waiting period before Hatfield is eligible for the treatment programs, citing *Lehman*, 270 Wis. 2d 695, ¶¶1, 18 (a court may in the exercise of its discretion establish a waiting period before a defendant is eligible for prison treatment programs); (2) the court did not explain "why the purpose of

13

[its] sentence would be thwarted by a rehabilitation element that might permit Hatfield to be released a few months early[.]" Both of these arguments boil down to the proposition that the court should have weighed Hatfield's rehabilitation needs move heavily in its consideration of the sentencing factors, which is a weighing process left to the court's discretion. As summarized above, the circuit court determined that Hatfield's rehabilitative needs were a secondary concern to its primary objectives of punishment and deterrence. *See **Gallion***, 270 Wis. 2d 535, ¶68 (a sentencing court has "wide discretion" in determining which factors should carry the most weight in a given case). The court also explained that Hatfield's return to abusing drugs and his turn to dealing those drugs, despite his successful completion of both the county treatment court and the prison Challenge Incarceration Program in prior cases, necessitated that he serve the entirety of the initial confinement imposed in these new cases.

¶33 We conclude that Hatfield fails to show that the circuit court erroneously exercised its discretion in denying his eligibility for the Challenge Incarceration Program and the Substance Abuse Program.

## CONCLUSION

¶34 For the reasons stated, we reject Hatfield's arguments that the circuit court was objectively biased when it imposed Hatfield's sentences, and that the court erroneously exercised its discretion by denying his eligibility for the Challenge Incarceration Program and the Substance Abuse Program. Accordingly, we affirm the circuit court's denial of Hatfield's postconviction motion for resentencing.

*By the Court.*—Judgments and orders affirmed.

14

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.